# FILED

NOV 0 7 2007

MICHAEL W. DOBBINS
CLERK, U.S. DISTRICT COURT

UNITED STATES BANKRUPCTY COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| In re: | ) | Case No. 02-B-02474 |
| | ) | (Jointly Administered) |
| KMART CORPORATION, et al. | ) | Chapter 11 |
| | ) | Hon. Susan Pierson Sonderby |
| Debtors. | ) | |
| | ) | |

## FLOORGRAPHICS, INC.'S MOTION TO WITHDRAW THE REFERENCE AND TRANSFER KMART'S OBJECTION TO FGI'S CLAIM

Pursuant to 28 U.S.C. § 157(d) and 28 U.S.C. § 1404(a), FLOORgraphics, Inc. ("FGI") hereby moves (the "Motion") for an order from the United States District Court for the Northern District of Illinois (the "Illinois District Court"), withdrawing the reference of Kmart's objection to FGI's Claim no. 42242, as amended twice, ("Claim Objection") from the United States Bankruptcy Court for the Northern District of Illinois ("Bankruptcy Court") for the purpose of transferring same to the United States District Court for the Eastern District of Michigan ("Michigan District Court") where Kmart Corporation recently filed a civil action against FGI that arises out of the same contract, facts and operative law of the Claim Objection. In support of its Motion, FGI states as follows:

I.    **SUMMARY OF ARGUMENT**

1.    FGI brings this Motion for discretionary withdrawal and transfer of the Claim Objection because:

- Kmart, in October, filed a complaint in Michigan regarding the same FGI Agreement that is at issue in the Claim Objection currently before the Bankruptcy Court;

- The Michigan Complaint and Claim Objection not only arise out of the same contract, facts and law; but FGI's Claim in the Bankruptcy Court is a complete defense to liability and FGI's Claim exceeds Kmart's damages in the Michigan Complaint;

- The Michigan District Court is the only court that may assert jurisdiction over both the Claim Objection and the Michigan Complaint;

07CV6306
JUDGE GRADY
MAG. JUDGE DENLOW

- The key witnesses in both the Claim Objection and the Michigan Complaint are within the subpoena range of the Michigan District Court and not the Bankruptcy Court.

- Withdrawal and transfer will benefit and not prejudice the bankruptcy estate because Kmart's Plan has already been confirmed and the Michigan District Court can simultaneously resolve in one trial all issues between the parties; and

- Other courts have granted discretionary withdrawal and transfer in similar cases.

## II.    BACKGROUND

2.     On or about March 18, 1998, Kmart Corporation ("Kmart") and FGI entered into a Retail Advertising License Agreement (the "1998 Agreement"), by which FGI was to supply floor advertising in Kmart stores.  The 1998 Agreement was subsequently modified by written addenda (collectively, with the 1998 Agreement, the "FGI Agreement").  One key issue surrounding the FGI Agreement is whether the provisions regarding the renewal of the FGI Agreement were modified by a letter agreement written and executed by Ken Kramer, of Kmart, and countersigned by George Rebh of FGI (the "Kramer Letter").

3.     In October of 2001, Kmart and NAMIS entered into a floor advertising agreement (the "NAMIS Agreement") whereby Kmart was granted a broad indemnification from NAMIS on account of any claim asserted in connection with the FGI Agreement.  FGI contended that the NAMIS Agreement violated the exclusivity provisions of the FGI Agreement.  This dispute became the subject of a declaratory judgment action filed by Kmart in the Michigan District Court as case no. 01-73607 (the "Original Michigan Action").  FGI asserted a counterclaim in the Original Michigan Action for Kmart's breach of the FGI Agreement by entering into the NAMIS Agreement.  As more fully discussed below, the Original Michigan Action was never resolved, however, but was stayed because of Kmart's bankruptcy filing in Chicago.  The Original Michigan Action was later closed for administrative reasons until Kmart attempted to revive it last month by filing the Michigan Complaint.

4.      On January 22, 2002, Kmart filed the above-referenced Chapter 11 cases in the United States Bankruptcy Court for the Northern District of Illinois.  While the Kmart bankruptcy remains open, Kmart's Plan of Reorganization (the "Plan") was confirmed on April 23, 2003, when the Bankruptcy Court entered its Findings of Fact, Conclusions of Law and Order under 11 U.S.C. § 1129(a) and (b) and Fed. R. Bankr. P. 3020 Confirming the Plan.  The Plan became effective on May 6, 2003.

5.      As part of the bankruptcy proceedings, on March 8, 2002, Kmart filed its Motion for Order Pursuant to 11 U.S.C. § 365 Approving the Rejection of the FGI Agreement (the "Rejection Motion").  The Rejection Motion was granted on August 14, 2002, when the Bankruptcy Court entered its Order, thereby triggering a breach of the FGI Agreement as of January 21, 2002.

6.      Prior to the claims bar date of July 31, 2002, and before the Bankruptcy Court ruled on the Rejection Motion, FGI filed proof of claim number 42242 (the "First FGI Claim"). The First FGI Claim has been amended, with court approval, on two occasions.  Most recently, on August 17, 2007, FGI filed its second amended proof of claim no. 57950 (the "Second Amended FGI Claim") reducing the amount of the First FGI Claim to $9,818,947.00.

7.      The Claim Objection arose when Kmart objected to the First FGI Claim in (i) its Tenth Omnibus Objection to Claims, dated June 16, 2003 and (ii) its Nineteenth Omnibus Objection to Claims, dated February 2, 2004.  On January 25, 2006 (the "January 2006 Ruling"), the Bankruptcy Court denied the summary judgment requested by Kmart's Motion for Summary Judgment and/or Motion *In Limine* Regarding Damages relating to the First FGI Claim (the

"Summary Judgment Motion") filed on March 30, 2005. [1]  While the same January 2006 Ruling initially granted Kmart's motion *in limine* to bar introduction of the Kramer Letter, on December 12, 2006, the Bankruptcy Court reconsidered the exclusion of the Kramer Letter *in limine* and ruled that the admissibility of the Kramer Letter would, instead, be decided at trial.

8.    On May 1, 2007, the Bankruptcy Court entered an order closing discovery relating to Kmart's Claim Objection on July 31, 2007.   The Claim Objection discovery is substantially complete except for the production of accountants' work papers and the deposition of a former counsel for FGI in other matters.  On November 5, 2007, the Bankruptcy Court set a deadline and briefing schedule on dispositive motions and motions to disqualify experts that extends into February 2008.  No final pretrial hearing or trial date has been set.

9.    On October 10, 2007, Kmart filed, in the Michigan District Court, Case No. 07-14299, a three-count complaint ("Michigan Complaint") against FGI.  *See* Michigan Complaint, attached hereto as **Exhibit A**.  The Michigan Complaint asserted three non-core, state-law causes of action regarding the FGI Agreement: (1) declaratory judgment count; (2) breach of contract count; and (3) conversion count.  The deadline to answer the Michigan Complaint is November 16, 2007.  FGI expects to file an answer and raise defenses to the Michigan Complaint based on the Second Amended FGI Claim.  Kmart's breach underlying the Second Amended FGI Claim is a complete defense to the Michigan Complaint and FGI's damages exceed the damages sought by Kmart in the Michigan Complaint.  Because of the co-extensive subject matter of the

---

[1] On December 12, 2006, the Bankruptcy Court also denied Kmart's second Motion *In Limine* and/or Motion for Dismissal of, or Summary Judgment On, Non-Rejection Claims of FGI ("Second Summary Judgment Motion") and allowed FGI to file an amendment of the First FGI Claim on December 26, 2006 to include certain non-rejection damages.

Michigan Complaint and the Second Amended FGI Claim, no additional discovery is anticipated with respect to the Michigan Complaint.

III.    **THE CLAIM OBJECTION SHOULD BE WITHDRAWN TO THE ILLINOIS DISTRICT COURT AS A PRECURSOR TO TRANSFER.**

10.    The District Court has discretion to withdraw a reference of any matter upon the filing of a timely motion and "for cause shown." 28 U.S.C. §157(d). The court may withdraw its reference regardless of whether the matter is a core or non-core proceeding, as defined in § 157(b)(2). *In re Sevko, Inc.*, 143 B.R. 114, 115 (N.D. Ill. 1992). There is ample justification for discretionary withdrawal of the Claim Objection in this case.

A.    <u>**Good Cause Exists to Withdraw the Reference of the Claim Objection.**</u>

11.    In determining whether good cause exists to grant a motion for withdrawal, a district court should consider judicial economy, promotion of uniformity and efficiency in bankruptcy administration, reduction of forum shopping, delay and costs to the parties, the particular court's familiarity with the case and whether the matter is core or non-core. *Coe-Truman Technologies, Inc. v. U.S (In re Coe-Truman Technologies, Inc.)*, 214 B.R. 183, 187 (N.D. Ill. 1997); *In re Sevko*, 143 B.R. at 117. The fact that an adversary proceeding is core is not dispositive, however. *See In re Sevko*, 143 B.R. at 115. ("The court may withdraw its reference regardless of whether the matter is a core or non-core proceeding").

1.    **Withdrawing the Reference of the Claim Objection and Transfer to the Michigan District Court Would Serve Judicial Economy.**

12.    FGI is in a situation in which it is involved in two proceedings in bankruptcy and non-bankruptcy forums, litigating essentially the same core of transactional facts with the same parties. When this situation arises, it generally has been found to constitute cause for discretionary withdrawal. *See In re Sevko*, 143 B.R. at 117 (the court granted discretionary withdrawal of the core proceeding because the movant was involved in two proceedings in two

different forums and reducing duplicative proceedings was in the interest of justice); *Elscint Limited v. First Wisconsin Financial Corp. (In re Xonics)*, 67 B.R. 33 (N.D. Ill. 1986) (court granted withdrawal of reference when the matter would be withdrawn from bankruptcy court and transferred from Northern District of Illinois to the Eastern District of Wisconsin for consolidation); *Wedtech Corp. v. London, M.D. (In re Wedtech)*, 81 B.R. 237, 239 (S.D.N.Y. 1987); *Enviro-Scope Corp. v. Westinghouse Electric Co. (In re Enviro-Scope Corp.)*, 57 B.R. 1005, 1007 (E.D. Pa. 1985).

13.    Reducing duplicative proceedings to a single forum serves judicial economy, and spares the resources of the parties in the bankruptcy proceeding. It also serves to protect the parties from inconsistent factual results. *Enviro-Scope*, 57 B.R. at 1008. There is no question that judicial economy will be served by conducting one hearing on the Claim Objection and Michigan Complaint.

14.    Only the Michigan District Court has subject matter jurisdiction to hear both the Michigan Complaint and the Claim Objection. As stated above, Kmart's Plan has been confirmed. After confirmation of the plan, the purpose of the bankruptcy case (dealing efficiently and expeditiously with all matters connected with the bankruptcy estate) is diminished. Indeed, bankruptcy subject matter jurisdiction following confirmation of a Chapter 11 plan has been described as "sharply reduced." *Spiers Graff Spiers v. Menako (In re Spiers Graff Spiers)*, 190 B.R. 1001, 1007 (Bankr. N.D. Ill. 1996) (*citing Pettibone Corp. v. Easley*, 935 F.2d 120, 122 (7th Cir. 1991) (stating that bankruptcy jurisdiction was "limited" post-confirmation)); *Schwinn Cycling & Fitness, Inc. v. Benonis (In re Schwinn Bicycle, Co.)*, 210 B.R. 747, 754-55 (Bankr. N.D. Ill. 1997). Post-confirmation, the Bankruptcy Court only retains jurisdiction to protect the confirmation order, prevent interference with the execution of the plan,

and otherwise aid in the plan's operation. *Cary Metal Products, Inc. v. Zerand-Bernal Group, Inc. (In re Cary Metal Products, Inc.)*, 152 B.R. 927, 932 (Bankr. N.D. Ill. 1993).

15.    The Michigan Complaint cannot be transferred to the Bankruptcy Court. It does not invoke a substantive right created by the Bankruptcy Code and does not involve an issue relating to administration of bankruptcy matters that arises only in bankruptcy cases. Instead, it pleads only state-law, non-core, causes of action. In fact, Bankruptcy Judge Sonderby recently ruled that she had no post-confirmation subject matter jurisdiction to hear an adversary proceeding involving another creditor because Kmart's suit to recover an overpayment raised only state law causes of action. *See* Excerpts of July 11, 2006 Transcript at p. 40 - 52, attached hereto as **Exhibit B.** The Bankruptcy Court similarly lacks jurisdiction over the Michigan Complaint which is a similar state-law collection action -- a fact that Kmart acknowledged at the October 24, 2007 Bankruptcy Court status. Accordingly, to promote judicial economy, the Claim Objection should be withdrawn and transferred to the Michigan District Court -- the only court that has jurisdiction to hear both the Claim Objection and the Michigan Complaint.

### 2.    Withdrawing the Reference of the Claim Objection Will Have No Impact on the Uniformity of Bankruptcy Administration.

16.    Since the Claim Objection does not "arise under" the Bankruptcy Code, there is no impact on the uniformity of the bankruptcy administration and discretionary withdrawal can be awarded. The Claim Objection centers around a breach of contract dispute arising under and interpreting Michigan law. Since there is no concern that the uniformity of bankruptcy administration would be impacted if the Claim Objection were withdrawn and transferred, this Court should grant FGI's Motion.

### 3. FGI is Not Forum Shopping by Withdrawal and Transfer of the Claim Objection to the Michigan District Court.

17. No forum shopping is involved or otherwise encouraged by the withdrawal of the reference of the Claim Objection. First, as described above, Kmart chose the Michigan District Court as its forum for the Michigan Complaint. Due to plan confirmation (and the Bankruptcy Court's July 11, 2006 ruling), the Bankruptcy Court does not have jurisdiction to hear both the Claim Objection and the Michigan Complaint. Accordingly, the only forum that can hear both causes of action is the Michigan District Court.

18. Second, FGI is not forum shopping. The Bankruptcy Court has decided two contested motions concerning the Claim Objection. In both cases, the Bankruptcy Court ruled in favor of FGI, denying Kmart's Summary Judgment Motion and Second Summary Judgment Motion. Following her reconsideration of the motion *in limine* to exclude the Kramer letter, the Bankruptcy Court has neither ruled for or against FGI regarding that evidence. FGI has no reason to believe that the Michigan District Court would address that motion or any future dispositive motion or motion to exclude expert testimony any differently than the Bankruptcy Court.

19. Further, the Michigan District Court will have a sounder basis to rule on the admissibility of the Kramer Letter because Mr. Kramer resides within the subpoena power of that Court. Hence, he can be compelled to testify about the circumstances surrounding the letter in Detroit, but not in Chicago. This Court, therefore, should withdraw and transfer the Claim Objection to promote judicial economy, for the convenience of the parties, and to reduce cost.

### 4. Withdrawal and Transfer of the Claim Objection will not Delay Adjudication or Add Significant Cost.

20. No delay will be incurred in withdrawing the reference and transferring the Claim Objection to the Michigan District Court because no additional discovery is needed for either the

Claim Objection or the Michigan Complaint. FGI will answer and raise defenses to the Michigan Complaint by November 16, 2007. In addition, FGI is ready to proceed to final pretrial and trial on both the Michigan Complaint as well as the Claim Objection without further discovery than that ordered by the Bankruptcy Court. Proceeding to a trial in the district court after completion of discovery supervised at the bankruptcy court level is both appropriate and timely. *See e.g., CDX Liquidating Trust v. Venrock Associates*, No. 04-c-7236, 2007 WL 1673403, at *3 (N.D. Ill. June 4, 2007); *Pisner v. Lunn Partners LLC*, No. 03-c-5816, 2004 WL 549444, at *7 (N.D. Ill. March 18, 2004); *Baldi v. Longview Aluminum*, No. 02-c-4608, 2002 WL 31834491, at *1 (N.D. Ill. Dec. 12, 2002); *In re Dreis & Krump Mfg. Co.*, No. 94-c-4281, 1995 WL 41416, at *3 (N.D. Ill. Jan. 31, 1995).

21.    The Parties will save expense (and incur no additional expense) by withdrawing and transferring the Claim Objection to the Michigan District Court. Kmart is a Michigan corporation with its principal place of business in Troy, Michigan. Its principal counsel on the Claim Objection and Michigan Complaint is a resident of suburban Michigan. The FGI Agreement includes a Michigan choice of law clause and was negotiated there. A majority of witnesses -- including Mr. Kramer -- and evidentiary proof are located in Michigan. There is not any significant connection between Kmart and Illinois other than the fact that Kmart is a participant (as a debtor) in the jointly administered chapter 11 case. FGI is a Pennsylvania corporation with its principal place of business in Hamilton, New Jersey. The convenience of the parties, witnesses and court would be served if this action were to be tried in the Michigan District Court - all factors weighing in favor of this Court granting FGI's Motion.

5.    **The Michigan District Court is Familiar with the Michigan Complaint and the Claim Objection Deals with the Same FGI Agreement.**

22.    As Kmart stated in the Michigan Complaint, the Michigan Complaint "was previously filed in the Michigan District Court where it was assigned 'Civil Action no. 01-73607' before the Honorable John Feikens. FGI filed a counterclaim in that action. The action was closed for administrative purposes by way of Order dated May 22, 2003." *See* **Exhibit A** at p. 2. Accordingly, Kmart is re-filing a cause of action relating to the FGI Agreement that was already before the Michigan District Court.

23.    The Michigan District Court is the appropriate venue for the Michigan Complaint and the Claim Objection because of its close connection to the agreement in question. In contrast, none of the operative facts alleged in the Claim Objection or Michigan Complaint occurred in Illinois. Illinois law does not apply to any of the claims stated in the Claim Objection. Because of the factors mentioned above, the Michigan District Court has the most substantial interest in resolution of the claims and the Claim Objection should be withdrawn and transferred.

B.    **FGI's Motion To Withdraw the Reference is Timely.**

24.    This Motion is timely because it was filed as soon as practicable after the grounds arose. The determination of timeliness is based on the facts of each case and is deemed timely when made "as soon as possible after the moving party has notice of the grounds for withdrawing the reference.... or at the first reasonable opportunity." *In re Lissner Corp.*, 115 B.R. 604, 608 (N.D. Ill. 1990) (citations omitted).

25.    This Motion is being filed within four weeks after FGI was served with the Michigan Complaint and before the time to answer has expired. Until Kmart filed the Michigan Complaint, FGI had no reason to seek to withdraw the Claim Objection. Now, however, it is in

both parties' interest, and in the interest of judicial economy, for this Court to withdraw and transfer the Claim Objection to the Michigan District Court so that the Claim Objection and the Michigan Complaint can be heard at the same time and in the same court. Accordingly, FGI's Motion is timely since it brought the Motion at the first reasonable opportunity.

26.     FGI's Motion also falls well within the time periods approved by other courts, both in this District and beyond. *See e.g. Novak v. Lorenz (In re Novak)*, 116 B.R. 626, 627-28 (N.D. Ill. 1990) (allowing withdrawal "nearly a year" after answer filed and "with trial looming"); *In re Sevko, Inc.*, 143 B.R. at 116-17 (allowed discretionary withdrawal after discovery deadlines were set and a motion to dismiss was decided by the bankruptcy court because withdrawal would not result in undue prejudice to the debtor); *Michigan Milk Producers Assoc. v. Hunter*, 46 B.R. 214, 215 (N.D. Ohio 1985) (motion to withdraw reference made 11 days before trial date set in bankruptcy court was timely filed).

27.     The Bankruptcy Court's management of pretrial proceedings regarding the Claim Objection closely resembles the administration of the above-cited cases prior to the withdrawal of the reference (*see* cases cited above at ¶ 20). Despite all of its involvement, however, no dispositive orders have been entered regarding the Claim Objection and no pre-trial hearing or trial date has been set. In addition, the bankruptcy case has been confirmed, weakening any argument that the Claim Objection needs to be heard in the Bankruptcy Court. For these reasons, much like the Debtor in *Sevko*, Kmart will not be prejudiced by withdrawing the Claim Objection to the Michigan District Court even though discovery is complete and summary judgment motions have been denied. Those matters merely prepared the case for pre-trial and trial by the Michigan District Court. *See e.g., Sevko*, 143 B.R. at 116-117 (citations omitted) (stating any discovery conducted in the bankruptcy court can be transferred to the district court

-11-

and the bankruptcy judge's ruling on the summary judgment motion saved the district court the trouble of rebriefing).

## IV.    ONCE THE CLAIM OBJECTION HAS BEEN WITHDRAWN TO THE ILLINOIS DISTRICT COURT, THE CLAIM OBJECTION SHOULD BE TRANSFERRED TO THE MICHIGAN DISTRICT COURT.

28.    Motions to transfer venue are governed by 28 U.S.C. § 1404(a). *FUL, Inc. v. Unified School Dist. No. 204*, 839 F. Supp. 1307, 1310 (N.D. Ill. 1993).[2]  To prevail on a motion to transfer under § 1404, the movant must establish that "(1) venue is proper in the transferor forum; (2) venue is proper in the transferee forum; and (3) a transfer serves the convenience of the parties and witnesses, and is in the interests of justice." *Jackson v. Venture Department. Stores, Inc.*, No. 98-c-6216, 1998 WL 778057, at *2 (N.D. Ill. Nov. 3, 1998).

### A.    Venue Is Proper in the Bankruptcy Court and the Michigan District Court.

29.    Venue is undoubtedly proper in both the Bankruptcy Court and the Michigan District Court for the Claim Objection, satisfying the first two factors under § 1404(a).  The Claim Objection is properly before the Bankruptcy Court because it is a core matter as defined under 28 U.S.C. § 157(b)(2).  In addition, the Claim Objection arose when Kmart was in bankruptcy and before the Plan was confirmed.  The Michigan District Court is also a proper venue for the Claim Objection for all of the reasons stated above -- there is diversity jurisdiction, a majority of witnesses and evidence are located in Michigan, and the facts from which the

---

[2] There appears to be a split of authority across the country on whether 28 U.S.C. § 1404 or 28 U.S.C. § 1412 governs motions to transfer when bankruptcy cases are implemented.  Courts in this District have commented, however, that while § 1404 is correct, there is not significant distinction between the two sections. *See e.g., Jackson v. Venture Department. Stores, Inc.*, No. 98-c-6216, 1998 WL 778057, at *2 (N.D. Ill. Nov. 3, 1998) ("the argument is a largely academic exercise; the factors to be considered under either statute are the same"); *Westminster Investments, LLC v. International Thoroughbred Breeders, Inc.*, No. 06-c-6189, 2007 WL 1302974, at *2 (N.D. Ill. May 2, 2007) ("The distinction between 28 U.S.C. § 1404 and 28 U.S.C. § 1412 is largely irrelevant as the factors to be considered under either statute are the same.").

dispute arose occurred in Michigan. Were it not for the pendency of the jointly administered chapter 11 case in the Bankruptcy Court, the Claim Objection would have been brought in Michigan (and *indeed was brought by Kmart* in the Michigan District Court before the bankruptcy was filed).

**B.　Withdrawal and Transfer of the Claim Objection to the Michigan District Court Will Serve the Convenience the Parties and the Interests of Justice.**

30.　In determining whether to transfer the Claim Objection, this Court should consider five factors in evaluating the convenience of the parties: "(1) plaintiff's initial choice of forum, (2) the situs of material events, (3) the relative ease of access to sources of proof, (4) the convenience of the witnesses to be called to testify in the case, and (5) the convenience of the parties themselves." *Westminster Investments, LLC v. International Thoroughbred Breeders, Inc.*, No. 06-c-6189, 2007 WL 1302974, at *3 (N.D. Ill. May 2, 2007). The court's interest in justice focuses on "the efficient administration of the courts, not the merits of the underlying dispute." *Id.* at *4.

31.　Kmart twice chose the Michigan District Court as its venue. First, by choosing to file the Original Michigan Action in the Michigan District Court before the bankruptcy was filed. Second, by re-filing the Michigan Complaint in the Michigan District Court after confirmation of the Plan.

32.　As noted in paragraphs 12 through 15 above, the interests of justice and the convenience of parties will be served by transferring the Claim Objection to the Michigan District Court. By transferring the Claim Objection to the Michigan District Court, this Court will reduce duplicative proceedings to a single forum, which will undoubtedly serve judicial economy and spare the resources of the parties from trying two proceedings in different venues.

33.    Transferring the Claim Objection to the Michigan District Court will also serve to protect the parties from inconsistent factual results and increase the convenience of the parties as explained in paragraphs 20 through 23 above.  There is absolutely no connection to Illinois (other than the bankruptcy) - none of the parties reside in Illinois; none of the operative facts alleged in the Claim Objection occurred in Illinois; and Illinois law does not apply.  To the contrary, Kmart is a Michigan corporation, the facts from which the dispute arose occurred in Michigan and Michigan law applies.  For all of these reasons, Michigan would serve as a more convenient forum for the Claim Objection, weighing in favor of transferring the Claim Objection to the Michigan District Court.

*[Remainder of Page Intentionally Left Blank]*

WHEREFORE, for the reasons stated herein, FGI respectfully requests that this Court enter the proposed order attached hereto as **Exhibit C** withdrawing the reference as to the Claim Objection and transfering same to the United States District Court for the Eastern District of Michigan and grant such other and further relief as the Court deems just.

Dated: November 6, 2007                          FLOORGRAPHICS, INC.


                                                  By: /s/ Patricia J. Fokuo
                                                      Patricia J. Fokuo

SCHIFF HARDIN L.L.P.
J. Mark Fisher
Patricia J. Fokuo
6600 Sears Tower
Chicago, Illinois 60606
(312) 258-5500

SUSMAN GODFREY L.L.P.
James T. Southwick
Richard W. Hess
1000 Louisiana, Suite 5100
Houston, Texas 77002
(713) 651-9366

BOIES, SCHILLER & FLEXNER L.L.P.
William C. Jackson
5301 Wisconsin Avenue, NW
Washington, D.C. 20015
(202) 237-2727

## CERTIFICATE OF SERVICE

I Patricia J. Fokuo, an attorney, certify that I have this 6th day of November, 2007, caused the following to be served a copy of the foregoing FLOORGRAPHICS, INC.'S MOTION TO WITHDRAW THE REFERENCE AND TRANSFER KMART'S OBJECTION TO FGI'S CLAIM via electronic service and, in addition, via email and caused a copy to be sent via federal express on the 7th day of November 2007 to the following:

William J. Barrett
BARACK FERRAZZANO KIRSCHBAUM
PERLMAN & NAGELBERG LLP
200 West Madison Street, Suite 3900
Chicago, Illinois 60606
Fax: 312.984.3150
WILLIAM.BARRETT@bfkpn.com

HOWARD & HOWARD ATTORNEYS, P.C.
Patrick M. McCarthy
101 North Main , Suite 300
Ann Arbor, Michigan 48104
Fax: 734.761.5957
pmm@h2law.com

and

James H. Geary
Comerica Building, Suite 800
151 South Rose Street
Kalamazoo, Michigan 49007-4718
Fax: 269.382.1568
jhg@h2law.com

/s/ Patricia J. Fokuo
          Patricia J. Fokuo

CH2\2153812.7

-16-

# EXHIBIT A

CH1\4014096.1

∿JS 44 (Rev. 11/04)　　　**CIVIL COVER SHEET**　County in which this action arose　Oakland County, MI

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. (SEE INSTRUCTIONS ON THE REVERSE OF THE FORM.)

**I. (a) PLAINTIFFS**
KMART CORPORATION

**DEFENDANTS**
FLOORGRAPHICS, INC.

**(b)** County of Residence of First Listed Plaintiff　Cook County, IL
(EXCEPT IN U.S. PLAINTIFF CASES)

County of Residence of First Listed Defendant　Atlantic County, NJ
(IN U.S. PLAINTIFF CASES ONLY)
NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE LAND INVOLVED.

**(c)** Attorney's (Firm Name, Address, and Telephone Number)
Patrick M. McCarthy (P49100)
Howard & Howard Attorneys, 101 North Main Street, Ste 500
Ann Arbor, MI 48104 / (734) 222-1483

Attorneys (If Known)

**II. BASIS OF JURISDICTION** (Select One Box Only)

☐ 1　U.S. Government Plaintiff

☐ 3　Federal Question
(U.S. Government Not a Party)

☐ 2　U.S. Government Defendant

☑ 4　Diversity
(Indicate Citizenship of Parties in Item III)

**III. CITIZENSHIP OF PRINCIPAL PARTIES** (Select One Box for Plaintiff and One Box for Defendant)
(For Diversity Cases Only)

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☐ 1 | Incorporated or Principal Place of Business In This State | ☐ 4 | ☑ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated and Principal Place of Business In Another State | ☐ 5 | ☑ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

**IV. NATURE OF SUIT** (Select One Box Only)

| CONTRACT | TORTS | | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|---|
| ☐ 110 Insurance | **PERSONAL INJURY** | **PERSONAL INJURY** | ☐ 610 Agriculture | ☐ 422 Appeal 28 USC 158 | ☐ 400 State Reapportionment |
| ☐ 120 Marine | ☐ 310 Airplane | ☐ 362 Personal Injury - | ☐ 620 Other Food & Drug | ☐ 423 Withdrawal | ☐ 410 Antitrust |
| ☐ 130 Miller Act | ☐ 315 Airplane Product | Med. Malpractice | ☐ 625 Drug Related Seizure | 28 USC 157 | ☐ 430 Banks and Banking |
| ☐ 140 Negotiable Instrument | Liability | ☐ 365 Personal Injury - | of Property 21 USC 881 | | ☐ 450 Commerce |
| ☐ 150 Recovery of Overpayment | ☐ 320 Assault, Libel & | Product Liability | ☐ 630 Liquor Laws | **PROPERTY RIGHTS** | ☐ 460 Deportation |
| & Enforcement of Judgment | Slander | ☐ 368 Asbestos Personal | ☐ 640 R.R. & Truck | ☐ 820 Copyrights | ☐ 470 Racketeer Influenced and |
| ☐ 151 Medicare Act | ☐ 330 Federal Employers' | Injury Product | ☐ 650 Airline Regs. | ☐ 830 Patent | Corrupt Organizations |
| ☐ 152 Recovery of Defaulted | Liability | Liability | ☐ 660 Occupational | ☐ 840 Trademark | ☐ 480 Consumer Credit |
| Student Loans | ☐ 340 Marine | **PERSONAL PROPERTY** | Safety/Health | | ☐ 490 Cable/Sat TV |
| (Excl. Veterans) | ☐ 345 Marine Product | ☐ 370 Other Fraud | ☐ 690 Other | | ☐ 810 Selective Service |
| ☐ 153 Recovery of Overpayment | Liability | ☐ 371 Truth in Lending | **LABOR** | **SOCIAL SECURITY** | ☐ 850 Securities/Commodities/ |
| of Veteran's Benefits | ☐ 350 Motor Vehicle | ☐ 380 Other Personal | ☐ 710 Fair Labor Standards | ☐ 861 HIA (1395ff) | Exchange |
| ☐ 160 Stockholders' Suits | ☐ 355 Motor Vehicle | Property Damage | Act | ☐ 862 Black Lung (923) | ☐ 875 Customer Challenge |
| ☑ 190 Other Contract | Product Liability | ☐ 385 Property Damage | ☐ 720 Labor/Mgmt. Relations | ☐ 863 DIWC/DIWW (405(g)) | 12 USC 3410 |
| ☐ 195 Contract Product Liability | ☐ 360 Other Personal | Product Liability | ☐ 730 Labor/Mgmt.Reporting | ☐ 864 SSID Title XVI | ☐ 890 Other Statutory Actions |
| ☐ 196 Franchise | Injury | | & Disclosure Act | ☐ 865 RSI (405(g)) | ☐ 891 Agricultural Acts |
| **REAL PROPERTY** | **CIVIL RIGHTS** | **PRISONER PETITIONS** | ☐ 740 Railway Labor Act | **FEDERAL TAX SUITS** | ☐ 892 Economic Stabilization Act |
| ☐ 210 Land Condemnation | ☐ 441 Voting | ☐ 510 Motions to Vacate | ☐ 790 Other Labor Litigation | ☐ 870 Taxes (U.S. Plaintiff | ☐ 893 Environmental Matters |
| ☐ 220 Foreclosure | ☐ 442 Employment | Sentence | ☐ 791 Empl. Ret. Inc. | or Defendant) | ☐ 894 Energy Allocation Act |
| ☐ 230 Rent Lease & Ejectment | ☐ 443 Housing/ | Habeas Corpus: | Security Act | ☐ 871 IRS—Third Party | ☐ 895 Freedom of Information |
| ☐ 240 Torts to Land | Accommodations | ☐ 530 General | | 26 USC 7609 | Act |
| ☐ 245 Tort Product Liability | ☐ 444 Welfare | ☐ 535 Death Penalty | | | ☐ 900 Appeal of Fee |
| ☐ 290 All Other Real Property | ☐ 445 Amer. w/Disabilities - | ☐ 540 Mandamus & Other | | | Determination Under |
| | Employment | ☐ 550 Civil Rights | | | Equal Access to Justice |
| | ☐ 446 Amer. w/Disabilities - | ☐ 555 Prison Condition | | | ☐ 950 Constitutionality of |
| | Other | | | | State Statutes |
| | ☐ 440 Other Civil Rights | | | | |

**V. ORIGIN** (Select One Box Only)

☐ 1　Original Proceeding

☐ 2　Removed from State Court

☐ 3　Remanded from Appellate Court

☑ 4　Reinstated or Reopened

☐ 5　Transferred from another district (specify)

☐ 6　Multidistrict Litigation

☐ 7　Appeal to District Judge from Magistrate Judgment

**VI. CAUSE OF ACTION**
Cite the U.S. Civil Statute under which you are filing (Do not cite jurisdictional statutes unless diversity):
28 U.S.C. 1332; 28 U.S.C. 2201
Brief description of cause:
Breach of contract case

**VII. REQUESTED IN COMPLAINT:**　☐ CHECK IF THIS IS A CLASS ACTION UNDER F.R.C.P. 23　　DEMAND $ In excess of $2 Million　　CHECK YES only if demanded in complaint:
JURY DEMAND: ☐ Yes ☑ No

**VIII. RELATED CASE(S) IF ANY**　(See instructions):　JUDGE　　　　DOCKET NUMBER

DATE
October 10, 2007

SIGNATURE OF ATTORNEY OF RECORD
[signature]

**FOR OFFICE USE ONLY**

RECEIPT #　　　AMOUNT　　　APPLYING IFP　　　JUDGE　　　MAG. JUDGE

## PURSUANT TO LOCAL RULE 83.11

1.  Is this a case that has been previously dismissed?  ☑ Yes   ☐ No

If yes, give the following information:

Court: U.S. District Court, Eastern District of Michigan, Southern Division

Case No.: 01-73607

Judge: Hon. John Feikens

2.  Other than stated above, are there any pending or previously discontinued or dismissed companion cases in this or any other court, including state court? (Companion cases are matters in which it appears substantially similar evidence will be offered or the same or related parties are present and the cases arise out of the same transaction or occurrence.)  ☑ Yes   ☐ No

If yes, give the following information:

Court: U.S. Bankruptcy Court, Northern District of Illinois, Eastern Division

Case No.: 02-B02474

Judge: Hon. Susan Pierson Sonderby

Notes :

This action was previously filed in this Court where it was assigned "Civil Action No. 01-73607" before the Honorable John Feikens. FLOORgraphics filed a counterclaim. This action was stayed by Kmart Corporation's bankruptcy filing in the United States Bankruptcy Court for the Northern District of Illinois, Eastern Division, which was designated Case No. 02-B-02474. This action was closed for administrative purposes by way of the Order attached hereto as Exhibit "A" dated May 22, 2003. Kmart Corporation's plan of reorganization has been approved and the automatic stay no longer applies.

# United States District Court
# Eastern District of Michigan



## *Summons in a Civil Action and Return of Service Form*

PATRICK J. DUGGAN

### 07 - 14299

Case Number and Judge Assignment (to be supplied by the Court)

| Plaintiff name(s)<br><br>Kmart Corporation | **V** | Defendant name(s)<br><br>FLOORgraphics, Inc. |
|---|---|---|
| Plaintiff's attorney, address and telephone:<br><br>Patrick M. McCarthy (P49100)<br>HOWARD & HOWARD ATTORNEYS, P.C.<br>101 North Main Street, Ste 300<br>Ann Arbor, MI 48104<br>Phone: (734) 222-1483 | | Name and address of defendant being served:<br><br>FLOORgraphics, Inc.   or   CT (Registered Agent)<br>242 Princeton Avenue         1515 Market Street, Ste 1210<br>Hamilton, NJ 08619           Philadelphia, PA 19102 |

## *To the defendant:*

This summons is notification that YOU ARE BEING SUED by the above named plaintiff(s).

1. You are required to serve upon the plaintiff's attorney, name and address above, an answer to the complaint within 20 days after receiving this summons, or take other actions that are permitted by the Federal Rules of Civil Procedure.

2. You must file the original and one copy of your answer within the time limits specified above with the Clerk of Court.

3. Failure to answer to take other action permitted by the Federal Rules of Civil Procedure may result in the issuance of a judgment by default against you for the relief demanded in the complaint.

**David J. Weaver**
**Clerk of the Court**

By: _____        _____10/10/07_____
                    Deputy Clerk                              Date of Issuance

*INT-0131-MIE-REV.06/99*

PAGE 1 OF 2

#308290-v1

# RETURN OF SERVICE

A copy of the summons and complaint has been served upon the defendant in the manner indicated below:

Name of Defendant served: _____

Date of service _____

## Method of Service

☐     Personally served at this address: _____

_____

☐     Left copies at the defendant's usual place of     _____
        abode with (name of person):

☐     At this address: _____

_____

☐     Other (please specify): _____

_____

Service fees:        Travel     $_____     Service     $_____     Total   $_____

*I declare under the penalty of perjury that the information contained in this Return of Service is true.*

_____        _____
Date                                        Signature of server

                                                _____
                                                Server's printed name

                                                _____
                                                Server's address

PAGE 2 OF 2



OCT 1 0 2007

CLERK'S OFFICE
U.S. DISTRICT COURT
ANN ARBOR, MI

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

KMART CORPORATION,

    Plaintiff,                    **PATRICK J. DUGGAN**          Civil Action No. 07 -

                  **MAGISTRATE JUDGE PEPE**
                                    Hon.

v.      •                                                              **07 - 1 4 2 9 9**

FLOORGRAPHICS, INC.,                                        (F/K/A Civil Action No. 01-73607,
                                             assigned to Hon. John Feikens)

---

HOWARD & HOWARD ATTORNEYS, PC    HOWARD & HOWARD ATTORNEYS, PC
By:    Patrick M. McCarthy (MI P49100)    By:    Thomas H. Walters (MI P51413)
Attorneys for Plaintiff                      Attorneys for Plaintiff
101 North Main Street, Suite 300        39400 Woodward Avenue, Suite 101
Ann Arbor, Michigan 48104             Bloomfield Hills, Michigan 48304
Telephone: (734) 222-1483            Telephone: (248) 645-1483

---

## COMPLAINT

    Plaintiff Kmart Corporation ("Kmart") submits the following Complaint to reopen its
prior case against Defendant FLOORgraphics, Inc. ("FLOORgraphics") pursuant to the Order
attached hereto through this re-filed action.

### PRELIMINARY STATEMENT

    This action was previously filed in this Court where it was assigned "Civil Action No.
01-73607" before the Honorable John Feikens. FLOORgraphics filed a counterclaim. This
action was stayed by Kmart Corporation's bankruptcy filing in the United States Bankruptcy
Court for the Northern District of Illinois, Eastern Division, which was designated Case No. 02-
B-02474. This action was closed for administrative purposes by way of the Order attached
hereto as Exhibit "A" dated May 22, 2003. Kmart Corporation's plan of reorganization has been
approved and the automatic stay no longer applies.

#306946-v2

## PARTIES, JURISDICTION AND VENUE

1.    Kmart is a Michigan corporation, with a principal place of business that was previously located in Troy, Michigan, as of the initial filing, which is now located in Hoffman Estates, Illinois.

2.    FLOORgraphics is a Pennsylvania corporation, with its principal place of business now located in Hamilton, New Jersey.

3.    This action concerning the parties' contract was previously filed by Kmart in this Court and assigned "Civil Action No. 01-73607" before the Honorable John Feikens, and is incorporated under the case number of this newly filed action pursuant to the Order attached hereto as Exhibit "A".

4.    This Court still has subject-matter jurisdiction over this action by virtue of the diversity of the parties herein, pursuant to 28 U.S.C. §1332, and pursuant to 28 U.S.C. §2201.

5.    FLOORgraphics still carries on a continuous and systematic part of its general business within the State of Michigan, and contracted with Kmart in Michigan.

6.    The amount of Kmart's damages demanded in this Complaint, prior to trebling and exclusive of interest, costs, and attorney fees, namely $2,000,000, exceeds the diversity of citizenship minimum jurisdictional amount of $75,000.00.

7.    This Court also continues to have personal jurisdiction over the parties.

8.    Venue was and is proper in this federal judicial district.

9.    This action was stayed by Kmart's bankruptcy filing in the United States Bankruptcy Court for the Northern District of Illinois, Eastern Division, which was designated Case No. 02-B-02474.

2

10.     This action was "CLOSED" for administrative purposes by way of the Order attached hereto as Exhibit "A" dated May 22, 2003. The attached Order provides that Kmart may reopen its prior action against FLOORgraphics.

## ADDITIONAL FACTS

11.     On or about March 18, 1998, Kmart and FLOORgraphics entered into a retail advertising license agreement (the "Agreement"). The Agreement permitted FLOORgraphics to place certain advertising decals on floors of certain Kmart stores in exchange for payment of a license fee to Kmart.

12.     The Agreement specified that it would terminate according to its own terms on March 17, 2000.

13.     On March 20, 2000, the parties executed an Addendum to the Agreement (the "March 2000 Addendum"). The March 2000 Addendum recited that the Agreement "expires on March 17, 2000," that the parties mutually agreed to extend the Agreement for one (1) year, and that "[a]ll other terms of the Agreement currently in effect will remain the same."

14.     On August 28, 2000, Kmart and FLOORgraphics executed a second Addendum (the "August 2000 Addendum"). The August 2000 Addendum recited that the March 2000 Addendum had extended the Agreement until March 17, 2001. The August 2000 Addendum then stated that the Agreement is extended to March 17, 2002. The August 2000 Addendum also provided that "[a]ll other terms of the Agreement currently in effect remain the same."

15.     Kmart notified FLOORgraphics that it would not extend the Agreement again, and that the Agreement would therefore terminate according to its own terms on March 17, 2002.

16.     Nearly 3 ½ years after the execution of the Agreement, FLOORgraphics for the first time produced to Kmart certain documents, including a document purporting to be a letter

3

signed by Ken Kramer of Kmart, allegedly dated March 24, 1998 (the "Kramer Letter"), which FLOORgraphics claimed gave it a perpetual contract, regardless of the terms set forth in the Agreement and in the Addenda. Based on the Kramer Letter, FLOORgraphics threatened legal action against Kmart.

17.    On or about September 24, 2001, Kmart sued FLOORgraphics in this action for a declaration of rights under the Agreement and a declaration relative to FLOORgraphics' baseless position concerning the Kramer Letter and the contract's duration.

18.    On or about December 17, 2001, FLOORgraphics counterclaimed.

19.    On or about January 22, 2002, Kmart filed bankruptcy and this action was stayed on or about January 23, 2002.

20.    This action was "CLOSED" for administrative purposes by way of the Order attached hereto as Exhibit "A" dated May 22, 2003. The attached Order provides that Kmart may reopen its prior action against FLOORgraphics.

21.    Kmart's plan of reorganization has been approved and the automatic stay no longer applies to Kmart's complaint in this action.

22.    In Kmart's bankruptcy proceeding, FLOORgraphics filed a claim premised upon its baseless position concerning the purportedly "perpetual" duration of the Agreement given the Kramer Letter. FLOORgraphics' claim in Kmart's bankruptcy has now twice been amended, and it remains contested as to both its validity and its amount in a core claim proceeding still pending in Kmart's post-confirmation bankruptcy proceeding as of this filing.

23.    The Bankruptcy Court has excluded the Kramer Letter in a pre-trial ruling, but deferred a ruling on FLOORgraphics' reconsideration motion until trial.

4

24. FLOORgraphics failed to release four final "License Fee" payments totaling $2,000,000 to Kmart pursuant to the terms of the Agreement.

25. FLOORgraphics has consistently admitted and acknowledged that at least $1,000,000 is due and unpaid to Kmart under the terms of the Agreement.

26. FLOORgraphics unilaterally "escrowed" $1,000,000 in Kmart funds while awaiting the outcome of FLOORgraphics' counterclaim and its still pending and contested claim in Kmart's bankruptcy.

27. FLOORgraphics has improperly contended that it has no current obligation to release to Kmart the unilaterally "escrowed" $1,000,000 in Kmart funds, until the FLOORgraphics claim in Kmart's bankruptcy has been finally adjudicated.

28. FLOORgraphics contends that the Kmart funds that FLOORgraphics unilaterally "escrowed" and any other amounts that FLOORgraphics is found to owe Kmart will be "set-off" against FLOORgraphics' claimed damages in the bankruptcy core claim proceeding and thereby "recouped" by Kmart at that time.

29. Kmart, on the other hand, maintains that FLOORgraphics' claim in Kmart's bankruptcy has absolutely no merit and that FLOORgraphics will receive nothing in terms of damages or any award on FLOORgraphics' claim in Kmart's bankruptcy.

30. Moreover, in addition to the undisputed $1,000,000 in Kmart funds that were unilaterally and improperly "escrowed" by FLOORgraphics in 2001 and 2002, there is another $1,000,000 in "License Fee" payments that FLOORgraphics failed to make to Kmart under the Agreement later in 2002.

5

## COUNT I

### ~~DECLARATORY JUDGMENT~~

31.    Kmart reaffirms and realleges the allegations set forth in paragraphs 1 through 30 above as if set forth again here.

32.    The parties' dispute concerning the aforementioned $1 Million in unilaterally "escrowed" Kmart funds and the additional $1,000,000 not paid by FLOORgraphics constitutes a case of actual controversy within the jurisdiction of this Court, pursuant to 28 U.S.C. § 2201.

33.    Kmart is entitled to a declaratory judgment in this action to the effect that FLOORgraphics improperly "escrowed" $1,000,000 of Kmart's funds and that FLOORgraphics failed to make two other "License Fee" payments to Kmart totaling $1,000,000, pursuant to the terms of the Agreement, with a corresponding $2,000,000 monetary judgment.

## COUNT II

### BREACH OF CONTRACT

34.    Kmart reaffirms and realleges the allegations set forth in paragraphs 1 through 33 above as if set forth again here.

35.    The parties had a contract, namely the Agreement.

36.    Kmart fully performed all of its contractual obligations to FLOORgraphics under the Agreement and all conditions precedent to payment were fully satisfied.

37.    FLOORgraphics has breached the Agreement by not paying the four final "License Fee" payments, totaling $2,000,000, directly to Kmart, pursuant to the terms of the Agreement.

38.    Kmart was damaged as a result of FLOORgraphics' breach of contract.

## COUNT III

### ~~CONVERSION~~

39.    Kmart reaffirms and realleges the allegations set forth in paragraphs 1 through 38 above as if set forth again here.

40.    FLOORgraphics knew that the $1,000,000 in funds placed in escrow belonged to Kmart and that FLOORgraphics had no legal right to retain or unilaterally "escrow" those specifically identified Kmart funds.

41.    Under all of the facts and circumstances surrounding FLOORgraphics' improper and unilateral "escrow" of Kmart's funds, the separate and discrete funds "escrowed" by FLOORgraphics constitute property subject to a claim for conversion, and the conduct of FLOORgraphics constitutes actionable conversion of the separate and discrete "escrowed" funds belonging to Kmart.

42.    Kmart therefore requests a further award of treble damages and an award of attorney fees as damages, to the fullest extent allowed by law.

## RELIEF REQUESTED

~~WHEREFORE, Kmart respectfully requests that this Honorable Court issue an order and~~ judgment in favor of Kmart and against FLOORgraphics (a) declaring that FLOORgraphics owes Kmart the four final "License Fee" payments, totaling $2,000,000, pursuant to the terms of the Agreement; (b) awarding Kmart $2,000,000 in money damages; and (c) awarding Kmart any other or additional relief or damages, including all treble damages, interest, costs, and attorney fees, to the fullest extent allowed by law.

Respectfully submitted,

KMART CORPORATION

/s/Patrick M. McCarthy
HOWARD & HOWARD ATTORNEYS, PC
By:  Patrick M. McCarthy (P49100)
Attorneys for Plaintiff
101 North Main Street, Suite 300
Ann Arbor, Michigan 48104
Telephone:  (734) 222-1483

HOWARD & HOWARD ATTORNEYS, PC
By: Thomas H. Walters (MI P51413)
Attorneys for Plaintiff
39400 Woodward Avenue, Suite 101
Bloomfield Hills, Michigan 48304
Telephone: (248) 645-1483

Dated: October 10, 2007

# EXHIBIT "A"

Case 2:01-cv-73607-JF     Document 12     Filed 05/22/2003     Page 1 of 1

# CLOSED



UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

MAY 2 2 2003

CLERK'S OFFICE
U.S. DISTRICT COURT
EASTERN MICHIGAN



KMART CORP.,

Plaintiff[s],

v.

FLOORGRAPHICS, INC,

Defendant.

Civil No. 01-73607
Hon. John Feikens

## ORDER OF ADMINISTRATIVE CLOSING

*IT IS ORDERED* that the case is closed for administrative purposes without prejudice as to any party which is now the subject of a bankruptcy case in which a stay of proceedings or an injunction is now in effect. This closing does not constitute a decision on the merits. If the bankruptcy stay or the injunction is removed, this case may be reopened on motion of either the plaintiff or the defendant.

*IT IS SO ORDERED.*

John Feikens
United States District Judge

Dated:  MAY 2 2 2003

# EXHIBIT B

CHI\4014096.1

Pre Cof Danji clam Δes
40-52    Relief

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| KMART CORPORATION, | ) | 02 B 02474 |
| | ) | Chicago, Illinois |
| | ) | 10:00 a.m. |
| Debtor. | ) | July 11, 2006 |

TRANSCRIPT OF PROCEEDINGS BEFORE THE
HONORABLE SUSAN PIERSON SONDERBY

APPEARANCES:

| | |
|---|---|
| For Reorganized Debtor: | Mr. William Barrett;<br>Mr. Andrew Goldman;<br>Ms. Kim Robinson; |
| For Jeri Fisher: | Mr. James Hill; |
| For Capco: | Mr. Phillip Nelson; |
| For Milton Ventures, et al: | Mr. David Golin; |
| For James Conaway: | Mr. Scott Lazar; |
| For Alliant Foodservice: | Ms. C. Barrish; |
| For Berkshire Business Trust: | Mr. Edward Leen; |
| For Gator Daytona, et al: | Mr. Jeffrey Dan; |
| For John T. McDonald; | Mr. John Morrier; |
| For  Winnie Mae Randolph: | Mr. Michael Desmond; |
| For Two claimants: | Mr. Max Rudmann;<br>(telephonically); |

| | |
|---|---|
| Court Reporter: | Jackleen DeFini, CSR, RPR<br>U.S. Courthouse<br>219 South Dearborn<br>Room 661<br>Chicago, Il.  60604. |

10488ba9-e333-4b46-9ca2-9ef7beb9aab0

Page 40

1    Partners and Gator Fairhaven status hearing.  The

2    court had previously entered an order setting today

3    as a discovery cutoff and setting a target date or

4    deadline date of August 8th for any summary judgment

5    pleadings with times thereafter to respond.  We are,

6    both sides are content with that schedule.  If any

7    such motions are filed, the briefing would be

8    concluded sometime -- well, I guess into early

9    September.  What we would suggest is that the status

10   hearing itself be continued to October 17th.

11              MR. DAN:  Good morning, Your Honor.

12   Jeffrey Dan on behalf of Gator Daytona and Gator

13   Fairhaven.  I would agree with counsel's remarks.

14              THE COURT:  All right.  Draft

15   scheduling order to follow.

16              MR. DAN:  Obviously at that point,

17   since all briefing will be done, either the court can

18   rule under advisement or set a hearing deadline.

19   Thank you, Your Honor.

20              MR. BARRETT:  Your Honor, next is item

21   26.  This is the adversary Kmart versus First

22   Berkshire, et al.  This is on a motion to dismiss,

23   motion to abstain responsive pleadings thereto.

24              THE COURT:  All right.  I'm ready to

25   rule.  Do you want me to do that now or shall we get

Page 41

1    through the rest of the morning matters?

2                   MR. BARRETT:  Perhaps we can get

3    through the remaining --

4                   Counsel, do you think it would be okay

5    to conclude the morning agenda?

6                   MR. LEEN:  How long will that take?

7                   THE COURT:  Well, I do have a

8    telephonic matter I see.  It may take some time.

9    I'll be happy to read my ruling into the record now.

10                  MR. BARRETT:  We should do that now.

11                  THE COURT:  The matter before the

12   court is the defendants' motion to dismiss the second

13   amended complaint pursuant to Rule 12(b)(1) or

14   12(b)(6), and defendants' motion for permissive

15   abstention.

16                  On January 22, 2002, Kmart Corporation

17   and 37 of its affiliates filed voluntary petitions

18   for reorganization under Chapter 11 of the Bankruptcy

19   Code.  The court confirmed the debtors' first amended

20   joint plan of reorganization on April 23, 2003.  On

21   the petition date, FBBT, and the other defendants in

22   this adversary proceeding (collectively known as the

23   defendants) were parties to 56 unexpired leases of

24   nonresidential real property with Kmart.  During the

25   bankruptcy case Kmart assumed 24 of those leases.

Page 42

1  The remainder were either rejected or terminated.

2  Defendants timely filed proofs of claims.  These

3  claims asserted in part administrative and cure

4  claims.  The administrative/cure claims asserted by

5  each defendant are described by Kmart on Exhibit A to

6  the second amended complaint and total $2,455,216.47.

7          In October 2003, Kmart paid undisputed

8  portions of the defendants' administrative/cure

9  claims.  That payment totalled $1,145,207.35, leaving

10  $1,310,009.12 in administrative/cure claims still in

11  dispute.

12          Quote, "In January 2004, Kmart and the

13  defendants reached a global agreement on the

14  defendants' cure, administrative, and unsecured

15  claims.  The agreement was incorporated into an

16  agreed order that was entered by this court on

17  January 20, 2004."  Citing Kmart's second amended

18  complaint, paragraph 13.  That agreed order provided,

19  inter alia, that "as to the defendants' claims for

20  administrative and cure amounts on the rejected

21  stores and the assumed stores, defendants shall have

22  an allowed aggregate claim of $2,600,000 to be paid

23  within 15 days of the order," end quote.  Paragraph

24  14.

25          In early February 2004, the defendants

Page 43

1   received payment of $2,600,000.  The payment was in

2   the aggregate allowed amount of the defendants'

3   administrative/cure claims set out in the agreed

4   order, without deducting therefrom the payments

5   already made by Kmart to the defendants on the

6   undisputed portion of those claims.  As noted,

7   according to Kmart, the total amount (undisputed and

8   disputed portions combined) of the

9   administrative/cure claims was $2,455,216.47.  Kmart

10  alleges that the defendants already received

11  $1,145,207.35 in payment on their claims towards the

12  entire allowed amount.  But, according to Kmart,

13  instead of just sending the defendants the amount

14  necessary that when added to the payments already

15  made would equal the entire allowed amount, Kmart

16  mistakenly paid the entire allowed amount of

17  $2,600,000, resulting in an overpayment to the

18  defendants.  Kmart wants to recover that overpayment.

19          To do so, on October 24, 2005, Kmart

20  filed a three-count amended adversary complaint

21  against the defendants.  The defendants filed a

22  motion to dismiss for failure to state a claim

23  pursuant to Rule 12(b)(6) of the Federal Rules of

24  Civil Procedure made applicable herein by Federal

25  Bankruptcy Rule 7012(b).

10488ba9-a333-4b46-9ca2-9af7beb9aab0

1       On April 11, 2006, the court advised
2   the parties at a hearing on the dismissal motion that
3   it would not rule on the motion at that time.  The
4   court expressed concerns about subject matter
5   jurisdiction over this postconfirmation matter which
6   the parties had not addressed.  The court also noted
7   the failure of Kmart to comply with Rule 7008(a)
8   which requires, inter alia, a statement in the
9   complaint as to whether the proceeding is core or
10  non-core.  The court allowed Kmart leave to file a
11  second amended complaint to include the core or
12  non-core allegation, and allowed the defendants leave
13  to thereafter amend the dismissal motion to assert
14  arguments to dismiss for lack of jurisdiction under
15  Rule 12(b)(1).  Kmart was given time to file a
16  response, quote, "sufficient to satisfy its burden to
17  demonstrate jurisdiction," unquote.
18      On April 24, 2006, Kmart filed a
19  second amended complaint which alleges that this
20  court has core jurisdiction as the proceeding, quote,
21  "concerns the enforcement of an order allowing a
22  claim, and the adjustment of the debtor/creditor
23  relationship," end of quote.  Citing the second
24  amended complaint, paragraph 7.
25      Count I of the second amended

10488ba9-a333-4b46-9ca2-9af7beb9aab0

Page 45

1    complaint is entitled, quote, "Enforcement of order,"

2    end of quote.  Kmart requests therein that the court

3    determine that Kmart is entitled to a return of the

4    overpayment.  Kmart contends that the quote,

5    "disgorgement," unquote, of the overpayment is

6    warranted quote, "given the language and intent of

7    the settlement order," end of quote.  Citing the

8    second amended complaint, paragraph 20.

9             In count II Kmart contends that the

10   overpayment was made by mistake; that the defendants,

11   quote, "have no legal or equitable right to the

12   overpayment, and in equity and good conscience the

13   overpayment ought to be returned to Kmart," end of

14   quote.  Second amended complaint, paragraph 22.

15            In count III Kmart bases its request

16   on an unjust enrichment theory.

17            On May 9, 2006 defendants filed a

18   separate motion to dismiss the second amended

19   complaint.  In their current motion to dismiss, the

20   defendants argue that this court lacks subject matter

21   jurisdiction over the second amended complaint.

22   Alternatively, if the court has jurisdiction, the

23   second amended complaint should be dismissed pursuant

24   to Rule 12(b)(6) because Kmart fails to state a

25   claim.  The defendants also filed a separate motion

1    for permissive abstention.

2         In its response, Kmart likens its

3    claim in count I to a request to enforce an order

4    requiring payment of a certain amount.  In that

5    regard Kmart asks, quote, "if a court has

6    jurisdiction to address the non-payment or

7    underpayment of an amount ordered by the court, does

8    it have the same jurisdiction to provide relief for

9    overpayment of such amount," end of quote.  Kmart

10   Corporation's response to defendants' motion to

11   dismiss second amended complaint, page 3.  Kmart

12   further contends that determination of count I,

13   quote, "necessarily will involve an interpretation of

14   the agreed order," end of quote.  Id.

15        Kmart's argument is misplaced.  The

16   agreed order is a contract between Kmart and the

17   defendants, and therefore its interpretation is

18   governed by ordinary rules of contract construction.

19   Citing Thomasville Furniture Industries, Inc. versus

20   the Elder-Beerman Stores, Corp. 250 BR 609; In re:

21   Delaney's II, Inc. 1991 Westlaw 337625 at page 2; and

22   in re:  Thornburg 277 BR 719.

23        One such ordinary rule is that when

24   construing a contract, the court's principal function

25   is to determine and enforce the intent of the

Page 47

1  parties.  Under the circumstances, the court's

2  interpretation of the agreed order is irrelevant.

3  Kmart urges the court to exercise its purported

4  inherent power to interpret orders post-confirmation

5  even perhaps when the dispute requiring such

6  interpretation has no effect on the estate are not

7  applicable here.  But see in re:  Conseco, Inc. 305

8  BR 281, citing in re:  FedPak Systems, Inc., 80 F.3d.

9  207, for the proposition that, quote, "that the

10  bankruptcy court did not have jurisdiction to

11  interpret its own order when resolution of the

12  dispute would not affect the amount of assets

13  available for distribution to creditors of the

14  estate," end of quote.

15         Rather than a claim to interpret or

16  enforce an order, count I concerns a claim for

17  recovery of an overpayment under an agreement.

18  Further, as Kmart acknowledges, counts II and III

19  also, quote, "allege state law causes of action," end

20  the quote.  Kmart's response, page 7.  Kmart, the

21  party seeking to invoke subject matter jurisdiction

22  over this proceeding, bears the burden of proving it

23  by, quote, "competent proof," end quote.  NLFC, Inc.

24  versus Devcom Mid-America, Inc. 45 F.3d 231.

25  Competent proof means, quote, "proof to a reasonable

1    probability that jurisdiction exists," end of quote.

2    Target Market Publishing, Inc. versus ADVO, Inc. 136

3    F.3d, 1139.

4            Section 1334(b) of Title 28 United

5    States Code is a statutory source of bankruptcy

6    jurisdiction and is thus the starting point to

7    ascertain whether jurisdiction exists.  Citing in re:

8    Cary Metal Products, 152 BR 927, affirmed,

9    Zerand-Bernal, Inc. versus Cox, 23 F.3d 159.  Section

10   1334 gives district courts original but not exclusive

11   jurisdiction of all civil proceedings arising under

12   Title 11, or arising in or related to cases under

13   Title 11.  Id.

14            "Arising under," jurisdiction

15   encompasses causes or actions, quote, "created or

16   determined by a statutory provision of Title 11."

17   End of quote.  Id. at 931.  Quote, "'Arising in'

18   jurisdiction encompasses issues relating to

19   administration of bankruptcy matters that arise only

20   in bankruptcy cases.  In re:  Schwinn Bicycle

21   Company, 210 BR 747.  Affirmed, 217 BR 790.

22   Jurisdiction over matters "arising under" the

23   Bankruptcy Code or, quote, "arising in," end of

24   quote, a bankruptcy case is limited to questions that

25   arise during the bankruptcy case and concern the

10498ba9-e333-4b48-9ca2-9af7beb9aab0

1   administration of the bankruptcy case, such as

2   whether to discharge a debtor.  Citing Zerand-Bernal,

3   23 F.3d at 162.  These matters are termed, quote,

4   "core proceedings," end of quote, and for the most

5   part are enumerated by statute in 28 USC Section

6   157(b)(2).  Citing Barnett versus Stern, 909 F.2d

7   973.

8                A proceeding is within, quote,

9   "related to" bankruptcy jurisdiction if its

10  resolution affects the amount of assets available for

11  distribution or the allocation of assets among

12  creditors.  In re:  Xonics, Inc. 813 F.2d 127.

13               There is no express statutory

14  provision providing for change in the nature of

15  subject matter jurisdiction after plan confirmation.

16  Section 1334 of Title 28 is still the operative

17  jurisdictional statute after confirmation and its

18  broad language is unchanged.  The Seventh Circuit in

19  Zerand-Bernal, observed, however, that while the

20  language of 1334(b) is broad enough to encompass

21  matters such as the postconfirmation injunction

22  sought in that case, the section should not be read

23  so broadly.  23 F.3d at 161.  Rather, the section

24  should be construed in light of the purposes of its

25  enactment.  Id.  After confirmation of the plan, the

Page 50

1    purpose of a bankruptcy case that is dealing

2    efficiently and expeditiously with all matters

3    connected with the bankruptcy estate is diminished.

4    The diminishment of the purpose effectively contracts

5    the 1334 jurisdiction in the post-confirmation

6    period.   Indeed, bankruptcy subject matter

7    jurisdiction following confirmation of a Chapter 11

8    plan has been described as, quote, "sharply reduced,"

9    end of quote.  Citing Spiers Graff Spiers, 190 BR

10   1001.  Citing Pettibone Corporation versus Easley,

11   935 F.2d 120 and quote, "limited," unquote.  Schwinn

12   Bicycle, 210 BR at 754 and 55.

13           This does not mean that there is no

14   post-confirmation bankruptcy jurisdiction and the

15   functions of the bankruptcy court are at an absolute

16   end.   Rather, the bankruptcy court retains

17   jurisdiction to protect confirmation order, prevent

18   interference with the execution of the plan, and

19   otherwise aid in the plan's operation.  Cary Metal,

20   152 BR at 932.

21           In this proceeding, the claim for

22   recovery of the overpayment does not invoke a

23   substantive right created by the Bankruptcy Code and

24   does not involve an issue relating to administration

25   of bankruptcy matters that arises only in bankruptcy

1    cases, even if it had its origin in a Section 365

2    motion.  See Zerand-Bernal, 23 F.3d at 162.  Quote,

3    "The fact that a claim has a distant federal origin

4    does not confer arising under jurisdiction."

5    Moreover, Kmart has not established by competent

6    proof that this dispute between nondebtor parties

7    affects the assets available for distribution or

8    allocation of assets among creditors, or implicates

9    the integrity or affects the implementation of the

10    plan.

11              Finally, in arguing for dismissal of

12    the complaint under Rule 12(b)(6), defendants contend

13    that Kmart's proper remedy is rescission of the

14    agreed order.  Kmart seizes on that argument to

15    support its contention that this court has

16    jurisdiction.  Kmart argues that a state court will

17    be unable to hear a request to rescind an agreed

18    order.  That may or may not be true, but Kmart admits

19    it is not seeking rescission of the agreed order,

20    preferring instead to rely on a claim for recovery of

21    the overpayment.  Moreover, defendants are not

22    currently indicating that they will seek to rescind

23    the agreed order.  There is no threat of a rescission

24    that may confer, quote, "related to," end of quote,

25    jurisdiction, and certainly no indication that a

10488ba9-e333-4b46-9ca2-9ef7beb9aab0

Page 52

1  rescission would constitute an attack on the plan in

2  this case.  See Id. (noting that it was an open

3  question as to whether a suit to rescind a bankruptcy

4  sale agreement that would require an undoing of the

5  plan could confer, quote, "related to," jurisdiction.

6              For these reasons, the court lacks

7  subject matter jurisdiction over the adversary

8  proceeding.  The motion to dismiss the second amended

9  complaint is granted in part.  The second amended

10 complaint will be dismissed under Rule 12(b)(1).  The

11 request to dismiss under 12(b)(6) is therefore denied

12 as moot.  The defendants' motion for permissive

13 abstention is also denied as moot.

14              Would you give me a minute order,

15 please, counsel for reasons cited on the record --

16              MR. LEEN:  Yes, Your Honor.

17              THE COURT:  -- entering the relief

18 entered.

19              Let me ask you also about the first

20 motion to dismiss.  Should that now also be denied as

21 moot?

22              MR. LEEN:  I believe so, Your Honor.

23 Edward Leen, Kelley, Drye & Warren, defendants in

24 this adversary proceeding.

25              THE COURT:  Give me a second minute

10488ba9-a333-4b46-9ca2-0ef7beb9aab0

Page 53

1    order then denying as moot the first motion to

2    dismiss the amended complaint.

3                    MR. LEEN:  Yes.  Yes, Your Honor.

4                    MR. BARRETT:  Your Honor, that takes

5    us to agenda item 27(a).  And I turn the podium over

6    to counsel who are involved in this matter.

7                    MR. NELSON:  Good morning, Your Honor.

8    Phillip Nelson on behalf of Capco, the plaintiffs in

9    this adversary proceeding.

10                   MR. GOLIN:  David Golin on behalf of

11   the defendants Milton Ventures Limited Partnership,

12   Moshe Shaltiel and Simone Saragosi.

13                   Your Honor, we have three motions that

14   are noticed up before you today.  First is a motion

15   for leave to have an attorney in our firm file an

16   additional appearance on behalf of the defendants

17   with respect to this adversary proceeding.

18                   THE COURT:  Any objection?

19                   MR. NELSON:  No objection, Your Honor.

20                   THE COURT:  I have signed the order.

21                   MR. GOLIN:  Thank you, Your Honor.

22                   Next we have two substantive motions

23   in response to the amended adversary complaint.  The

24   first is with respect to counts I, II, III and V of

25   the amended complaint which we are seeking to dismiss

10488ba9-a333-4b46-9ca2-9ef7beb9aab0

## UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

| | | |
|---|---|---|
| In re: | ) | Case No. 07-C-_____ |
| | ) | |
| | ) | Case No. 02-B-02474 |
| | ) | (Jointly Administered) |
| KMART CORPORATION, et al. | ) | Chapter 11 |
| | ) | |
| Debtors. | ) | |
| | ) | |

### ORDER GRANTING THE MOTION
### OF FLOORGRAPHICS, INC.'S MOTION TO WITHDRAW THE REFERENCE AND
### TRANSFER KMART'S OBJECTION TO FGI'S CLAIM

This cause coming to be heard on the Motion of FLOORgraphics, Inc. ("FGI") to Withdraw the Reference and Transfer Kmart's Claim Objection to FGI's Claim (the "Motion"), the Motion having been timely filed and due notice having been given, and the Court having being fully advised in the premises;

**IT IS HEREBY ORDERED** as follows:

1.     The Motion is granted in its entirety for good cause shown, including the interest of justice and the convenience of the witnesses and parties to have decided in one forum the identical issues of law and fact raised by the Claim Objection (as defined in the Motion) and the civil action pending in the United States District Court for the Eastern District of Michigan under the caption *Kmart Corporation vs. FLOORgraphics, Inc.,* Case No. 07-14299 (the "Michigan Action"). All objections to the Motion are overruled.

2.     The reference relating to the Claim Objection is withdrawn and transferred to the United States District Court for the Eastern District of Michigan for further proceedings related to Michigan Action.

**Exhibit C**

3.　　Counsel for FLOORgraphics and Kmart Corporation are directed to file with the Clerk of the United States Bankruptcy Court for the Northern District of Illinois a joint designation of the record relating to Kmart's Claim Objection within twenty- one days.　The Clerk of the Bankruptcy Court is hereby ordered to transmit such record to the Clerk of the United States District Court for the Eastern District of Michigan.

Dated: _____　　　　ENTER

_____
United States District Court Judge

**Order Prepared By:**

SCHIFF HARDIN LLP
6600 Sears Tower
Chicago, IL  60606-6473
Telephone:  (312) 258-5500
Facsimile:  (312) 258-5600

CH2\2157080.1

- 2 -