IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

In Re
KMART CORPORATION                 Case No.: 1:07-cv-06306

                                                      Honorable John F. Grady

     Debtor.
_____/

**KMART'S RESPONSE IN OPPOSITION TO
FLOORGRAPHICS, INC.'S MOTION TO WITHDRAW THE REFERENCE AND
TRANSFER KMART'S OJBECTION TO FGI'S CLAIM**

    Kmart Corporation, Inc. ("Kmart") submits the following Response in Opposition to FLOORgraphics, Inc.'s ("FGI") "Motion to Withdraw the Reference and Transfer Kmart's Objection to FGI's Claim" pursuant to 28 U.S.C. §157(d):

    FGI has not made the required "timely" showing of sufficient "cause" to support its request to withdraw the reference of this "core proceeding" from the Bankruptcy Court, where FGI's claim has been litigated for more than five years. Judicial economy and efficiency will not be served by withdrawing the reference. Judge Susan Sonderby of the Bankruptcy Court has held extensive proceedings over this five year period, has extensive experience with all issues in this case, has ordered summary judgment and Daubert motion filing for December 14, 2007, and is prepared, if necessary, for an immediate trial following a ruling on the motions.

    Among other things, over the last five years:

- The Bankruptcy Court conducted evidentiary hearings over the course of several days concerning the rejection of FGI's contract and issued a detailed written opinion that was filed under seal;

- The Bankruptcy Court adjudicated and granted Kmart's motion *in limine* to exclude the so-called "Kramer letter" upon which FGI's claim is based (*see e.g.* Ex. "A");

460874v1

- The Bankruptcy Court later deferred a ruling on FGI's reconsideration motion concerning the exclusion of the so-called "Kramer letter" until the time of trial (*see e.g.* Ex. "B");

- The Bankruptcy Court has adjudicated various discovery disputes and has entered various orders compelling FGI to produce evidence that FGI had refused to produce (some of these rulings are still being effectuated and may require further Bankruptcy Court action) (*see e.g* Ex. "C");

- The Bankruptcy Court has issued various Protective Orders governing the discovery process and the handling of evidence exchanged in this matter (*see e.g.* Ex. "D"); and

- The Bankruptcy Court has confirmed a plan with provisions governing FGI's claim.

As such, Judge Sonderby has extensive experience with the facts and law of this case. Also, Judge Sonderby is in the best position to interpret and enforce her prior rulings.

FGI's belated motion to withdraw reference was triggered by a separate action being re-filed by Kmart in the U.S. District Court in Detroit to preserve its right to obtain an affirmative judgment of $2,000,000 against FGI for the amounts unpaid to Kmart by FGI. Kmart needs to preserve this claim for affirmative relief in the event the Bankruptcy Court allows FGI's claim against Kmart at something less than $2,000,000. Kmart made this filing because of doubt (shared by FGI, as evident from its pleadings) over whether the Bankruptcy Court has the jurisdiction to grant Kmart affirmative relief on a counterclaim, as opposed to simply ruling on Kmart's defenses of set off and recoupment, both of which are at issue in the Bankruptcy Court litigation. Importantly, however, the merits of these defenses will be decided by the Bankruptcy Court and the proofs required for these defenses are the same as the proofs required for Kmart's right to affirmative relief in the District Court for Eastern District of Michigan action. Thus, one way or another, this issue will be resolved in the Bankruptcy Court and the only action required thereafter will be for the District Court in the Eastern District of Michigan to enter the appropriate judgment based on the Bankruptcy Court's findings.

The District Court in the Eastern District of Michigan appreciated the dynamics of these facts as reflected in the Honorable John Feikens' December 3, 2007 order staying Kmart's Eastern District of Michigan case until FGI's claim in bankruptcy is adjudicated by the Bankruptcy Court in Illinois. (Ex. "E" - "IT IS ORDERED that Plaintiff Kmart Corporation's Motion to Stay is GRANTED, pending resolution of the Floorgraphics' claim in the Kmart bankruptcy proceeding.")  Under the circumstances, this Court can and should exercise its discretion by denying FGI's motion to withdraw reference because the only purported "cause" for FGI's motion no longer exists.  In any event, FGI's motion is not "timely" and is not supported by sufficient "cause" to warrant withdrawal of the reference to the Bankruptcy Court.

## I.     Introduction and Background.

Kmart and FGI had a written contract, which was amended twice, that expired by its own terms on March 18, 2002.  Subject to the terms of their contract, FGI and Kmart agreed, among other things, that Kmart would grant FGI a license to place advertising decals on the floors of certain Kmart stores, for which FGI would collect revenues from advertisers; in turn, FGI agreed to pay Kmart certain minimum guaranteed license fees annually, or 25% of its generated revenues, whichever was greater.  (*Id.*).

After Kmart advised FGI that Kmart would not further extend FGI's contract beyond its existing term ending March 18, 2002, FGI produced a copy of a letter purporting to clarify the parties' contract – the so-called "Kramer letter" – upon which FGI bases its breach of contract claim against Kmart.  Kmart did not have the Kramer letter in its files until FGI forwarded it to Kmart in September of 2001.

In 2001, Kmart sued FGI in the Eastern District of Michigan with regard to their contract dispute and FGI counterclaimed.  In January of 2002, Kmart filed a petition in bankruptcy in the

Northern District of Illinois, and the Eastern District of Michigan case was stayed, and later administratively closed. In 2002, FGI originally filed a Proof of Claim for $59 Million, which it twice amended. FGI's current claim is now for the reduced amount of $9,818,947.00.

Bankruptcy Judge Susan Sonderby has presided over the FGI claim (a core proceeding) for many years, and has held various hearings, made various rulings, and has unique experience with the parties' positions and the claim, and extensive knowledge of the facts and procedural history of FGI's claim. After extensive discovery, some of which remains incomplete, summary judgment and Daubert motions are now looming. Judge Sonderby previously excluded the evidence upon which FGI's claim is based (the so-called "Kramer letter") and recently ordered FGI to provide various evidence to Kmart in response to discovery opposed by FGI.

Underscoring the need for Judge Sonderby to interpret and enforce her various prior rulings in this case, FGI incorrectly claims that Kmart's summary judgment motions have been denied. In reality, Judge Sonderby excluded the evidence upon which FGI's claim is based, and did not adjudicate various alternative grounds for summary judgment at that time. The parties obviously need Judge Sonderby to resolve issues concerning her prior rulings and enforce them.

Kmart's complaint in the Eastern District of Michigan was re-filed by Kmart in October of 2007 merely to preserve Kmart's right to an affirmative judgment in Kmart's favor in the event that the Bankruptcy Court determines that FGI's claim has no merit. FGI admits that it owes Kmart at least $1 Million, which FGI began improperly and unilaterally holding in "escrow" in late 2001 and 2002, while Kmart maintains that a total of $2 Million remains unpaid by FGI and owing to Kmart under the parties' contract. FGI agrees that whatever amount FGI is found to owe Kmart would be offset against any amount awarded on its claim in Kmart's bankruptcy, if FGI is awarded anything at all.

Therefore, contrary to the claims made in FGI's motion, the Bankruptcy Court could decide all of the issues in both cases, including the amount owed by FGI to Kmart, by final judgment, if FGI's claim is valued at an amount exceeding $2 Million.  If FGI receives nothing on its claim, however, Kmart would then be entitled to judgment against FGI for the amounts owed by FGI to Kmart, an issue that would be resolved at that point in whole or in part by collateral estoppel and *res judicata*, leaving only entry of judgment in the Eastern District of Michigan case.

The stay order from Judge Feikens in the Eastern District of Michigan case therefore makes the most sense here.  Importantly, *before* FGI ever moved to withdraw reference, Kmart had already agreed to stay the Eastern District of Michigan case until the Bankruptcy Court ruled on FGI's claim.  FGI did not respond, but tried instead a tactic aimed at avoiding summary judgment or trial in front of Judge Sonderby.  Kmart then formally moved to stay the Eastern District of Michigan case and Judge Feikens issued his order granting that motion.  (Ex. "E").

In short, re-filing the Michigan case was necessitated by the fact that, as discussed in FGI's Motion, Judge Sonderby may lack in the claim objection proceeding the jurisdiction under 28 U.S.C. § 1334 necessary to issue a money judgment in favor of Kmart as post-confirmation debtor.  Again, the amounts owed to Kmart by FGI would be offset against the amount awarded on FGI's claim (if any) and thereby recouped by Kmart.  There is no doubt that the Bankruptcy Court has, in adjudicating the amount of FGI's claim, the jurisdiction to consider any offsets. But, if the Bankruptcy Court allows FGI's claim at zero, Kmart might then be entitled to a judgment against FGI for the amounts owed by FGI to Kmart (net of any amount applied as a set off by the Bankruptcy Court in allowing FGI's claim at zero).  This jurisdictional complication provides no basis to withdraw the reference of this heavily litigated dispute away from Judge

Sonderby, who has extensive experience with the matter and is in the best position to interpret and enforce her prior rulings, particularly where Judge Feikens has stayed the Eastern District of Michigan case pending an adjudication of FGI's claim in bankruptcy.

Again, the sole basis offered as purported support for FGI's request to withdraw the reference of its claim from Kmart's bankruptcy was Kmart's re-filing of the Eastern District of Michigan case. Because that case is now stayed by Court Order pending an adjudication of FGI's claim in bankruptcy, the sole and exclusive reason for FGI's motion no longer exists and FGI's motion can simply be denied as moot. Furthermore, even if the reference were withdrawn (which again would be untimely and unsupported by cause), this matter would have to return to the Bankruptcy Court for final disposition in accordance with the terms of the now confirmed plan anyway. In short, no judicial economy or efficiency would result from withdrawal of the reference and FGI's motion should be denied.

## II.    Law and Argument.

The applicable standards governing FGI's motion to withdraw the reference under 28 U.S.C. §157(d) were recently described as follows:

> To grant a party's motion to withdraw the reference under the discretionary provision of Section 157(d), the court must find (1) the motion was "timely" and (2) the party has shown "cause" for withdrawal. *Id.*; *see also*, *United States v. Kaplan,* 146 B.R. 500, 503 (D. Mass. 1992) ("Consistent with the plain language of the statute, this court will apply a two prong test ... (1) the motion must be *timely* filed, and (2) the movant must demonstrate *cause* for the withdrawal.") (Emphasis in original). Waldner, as the moving party, bears the burden of proof on both elements. *Kaplan*, 146 B.R. at 503; *see also, In re Ponce Marine Farm, Inc.*, 172 B.R. 722, 725 (D.P.R. 1994) (similar); *In re Mich. Real Estate Ins. Trust,* 87 B.R. 447, 459 (E.D. Mich. 1998) (similar).

*In re H & W Motor Express Co.*, 343 B.R. 208, 213 (N.D. Iowa 2006).

Discretionary withdrawal is a "narrow exception" to be cautiously applied, which is only available in limited, exceptional, and compelling circumstances:

> While permissive withdrawal is still used as a narrow exception to the general rule that bankruptcy proceedings should be adjudicated in the bankruptcy court, it employs different criteria for determining whether withdrawal should be exercised. … In order to insure that the exception does not swallow the rule, courts remain cautious in applying § 157(d). As such withdrawal, even discretionary withdrawal is permitted in only a limited number of circumstances. *U.S. v. Kaplan,* 146 B.R. 500 (D. Mass. 1992). *See also In re Onyx Motor Car Corp.,* 116 B.R. 89 (S.D. Ohio 1990) (a motion for withdrawal of reference not well received absent exceptional and compelling circumstances); *In re DeLorean Motor Co.,* 49 B.R. 900 (E.D. Mich. 1985) (overriding interest must be shown to override presumption that Congress intended to have bankruptcy proceedings adjudicated in bankruptcy court).

*In re Ponce Marine Farm, Inc.,* 172 B.R. 722, 724 and note 2 (D. Puerto Rico 1994).

Whether the claim involves a core proceeding, like Kmart's objection to FGI's claim in Kmart's bankruptcy, is the first consideration and the "most important" factor:

> Whether the claim is core or non-core is the "most important" factor, *In re Burger Boys, Inc.*, 94 F.3d 755, 762 (2d Cir. 1996), and "[a] district court considering whether to withdraw the reference should first evaluate whether the claim is core or non-core, since it is upon this issue that questions of efficiency and uniformity will turn." *In re Orion*, 4 F.3d at 1101. … "Hearing core matters in a district court could be an inefficient allocation of judicial resources" given that bankruptcy courts can adjudicate cases to final binding judgments and that the cases often involve facts with which the bankruptcy court is already familiar and legal issues within the bankruptcy court's expertise. *Id.*

*In re Enron Corp.,* 295 B.R. 21, 25-26 (S.D.N.Y. 2003).

28 U.S.C. § 157 expressly provides that FGI's claim is a "core proceeding" in bankruptcy.

> It is generally accepted that the claims allowance process constitutes a core proceeding under 28 U.S.C. § 157(b)(2)(B). *Pepper v. Litton*, 308 U.S. 295, 304, 60 S. Ct. 238, 84 L. Ed. 281 (1939) (holding that the jurisdiction of the bankruptcy court is exclusive of all other courts with respect to the allowance and disallowance of claims); *In re Meyertech Corp.*, 831 F.2d 410, 417 (3d Cir. 1987) (noting that the process of allowance or disallowance of claims against the estate is a core proceeding); *see also, In re Adelphia Communications Corp.*, 307 B.R. 404, 418 (Bankr. S.D.N.Y. 2004) ("Because nothing is more directly at the core of bankruptcy administration ... than the qualification of all liabilities of the debtor, the bankruptcy court[']s determination whether to allow or disallow a claim is a core function") (citation omitted).

*In re American Capital Equipment, LLC*, 324 B.R. 570, 573-574 (W.D. Pa. 2005).

### A.    FGI's Motion Is Not Timely.

Here, FGI is asking the District Court to withdraw reference of FGI's claim in Kmart's bankruptcy (a core proceeding), more than five years after FGI filed its proof of claim, and more than four years after Kmart's plan of reorganization (with provisions governing FGI's claim) was confirmed.  During the more than five years that Judge Susan Sonderby has presided over Kmart's bankruptcy and this core proceeding concerning Kmart's objection to FGI's proof of claim, Judge Sonderby has conducted evidentiary hearings over the course of several days concerning the rejection of FGI's contract, adjudicated and granted Kmart's motion *in limine* to exclude the so-called "Kramer letter" upon which FGI's claim is based, later deferred a ruling on FGI's reconsideration motion concerning the exclusion of the so-called "Kramer letter" until the time of trial, adjudicated various discovery disputes and has entered various orders compelling FGI to produce evidence that FGI had refused to produce (some these rulings are still being effectuated and may require further Bankruptcy Court action), issued various Protective Orders governing the discovery process and the handling of evidence exchanged in this matter, and confirmed a plan with provisions governing FGI's claim, among other things.  As such, Judge Sonderby has unique and extensive experience with the facts and law of this case.  Also, Judge Sonderby is in the best position to interpret and enforce her prior rulings.

FGI's motion states: "Until Kmart [re-]filed the Michigan Complaint, FGI had no reason to seek to withdraw the Claim Objection."  (See ¶ 25).  Again, because the Eastern District of Michigan case has now been stayed, the only grounds asserted as purported support for FGI's motion no longer exists and FGI no longer has any support for its contention that its request to withdraw the reference of its claim, five years later, is otherwise somehow timely.

## B. There Is No Cause For Discretionary Withdrawal.

FGI cites *In re Sevko*, 143 B.R. 114 (N.D. Ill. 1992) and suggests that this case is analogous. In reality, *Sevko* is fundamentally different from this case. In *Sevko*, "the only matter of substance conducted before the bankruptcy judge on the merits of this matter was Sevko's motion to dismiss." *Id*. at 116-117. The Court in *Sevko* exercised its discretion and granted the motion to withdraw in that case "because the defendants here in Ullman-Briggs' action are not just Sevko, who is in bankruptcy, but Salton / Maxim, who is not." *Id*. at 117. In other words, there were other parties involved in the related district court case in *Sevko* such that the two cases would necessarily proceed in tandem if the reference was not withdrawn.

In fact, all of the relevant factors identified in *Sevko* (i.e. judicial economy, convenience, the particular court's knowledge of the facts, promoting the uniformity and efficiency of bankruptcy administration, reduction of forum shopping and confusion, and conservation of debtor and creditor resources) weigh in favor of denying the requested withdrawal. *Sevko*, 143 B.R. at 117. Here, the Bankruptcy Court's unique knowledge and experience with the case make it more efficient for Judge Sonderby to preside over the matter. "Denying the motion for withdrawal the reference similarly promotes the uniformity of bankruptcy administration. The bankruptcy court has an interest in interpreting its own orders." *Hawaiian Airlines, Inc. v. Mesa Air Group, Inc.,* 355 B.R. 214, 224 (D. Hawaii 2006).

In this case, unlike *Sevko*, Judge Sonderby has extensive experience with the facts and the issues and has made rulings that will need interpretation and enforcement. The related district court case here has been stayed and there are no other parties involved, unlike *Sevko*. Indeed, none of the cases cited by FGI involve a core proceeding that has been litigated in bankruptcy

court for over five years and a district court action between the same parties which has been stayed pending a determination in the bankruptcy court.

This case is more akin to *Hawaiian Airlines, Inc. v. Mesa Air Group, Inc.,* where the Court denied withdrawal stating:.

> The existence of core matters weights in favor of resolution of the adversary proceeding by the bankruptcy court. … The other relevant factors also weigh against permissive withdrawal. Resolution of this action by the bankruptcy court is the most efficient use of judicial resources. The bankruptcy court is already familiar with many of the circumstances relevant to the instant case. The bankruptcy court entered the Plan Procedures Order under which Mesa was obligated to execute the Confidentiality Agreement. The bankruptcy court is in the best position to interpret the Confidentiality Agreement and to assess the validity of HAL's turnover claim under 11 U.S.C. § 542(a). … Denying the motion for withdrawal the reference similarly promotes the uniformity of bankruptcy administration. The bankruptcy court has an interest in interpreting its own orders. … Allowing this case to proceed in the bankruptcy court will also minimize delay and the cost to the parties. At the time Mesa filed its motion for withdrawal of reference, the bankruptcy court had already held a scheduling conference and entered a scheduling order which provides for the trial to begin on April 2, 2007.

*Hawaiian Airlines, Inc. v. Mesa Air Group, Inc.,* 355 B.R. 214, 223-224 (D. Hawaii 2006).

Other Courts have often recognized that because of the Bankruptcy Court's unique experience with the facts and law of a case, it is more efficient for the Bankruptcy Court to adjudicate the matter:

> The Bankruptcy Court's unique familiarity with the facts and law relating to Enron's bankruptcy will allow it to resolve this dispute more efficiently than would a court completely new to the case. *See Orion*, 4 F.3d at 1101 ("[H]hearing core matters in a district court could be an inefficient allocation of judicial resources given that the bankruptcy court generally will be more familiar with the facts and issues.").
>
> The Bankruptcy Court has presided over this case for almost one year, is already familiar with Enron's claims, and thus is best equipped to handle discovery and other pretrial matters. Again, judicial economy favors denial of Belo's motion to withdraw the reference.

*In re Enron Corporation,* 317 B.R. 232, 235 (S.D.N.Y. 2004).

> In sum, none of Hunnicutt's arguments support its contention that withdrawal of the reference would promote an efficient use of judicial resources. Indeed, for this Court to become familiar with the facts and law of this case would duplicate much of what Judge Goodman has already accomplished.
>
> Plainly, the most efficient use of judicial resources is for this matter to remain before the bankruptcy court where Judge Goodman may decide the cross-motions for summary judgment which are fully briefed and pending before him.

*In re Ames Department Stores, Inc.,* 190 B.R. 157, 163-164 (S.D.N.Y. 1995).

FGI, on the other hand, cites various cases inapplicable cases involving non-core matters where the right to a jury trial is a relevant consideration in the analysis. *See, e.g. CDX Liquidating Trust v. Venrock Associates*, 2007 W.l. 1673403 (N.D. Ill. 2007) and *Enviro-Scope Corp. v. Westinghouse Electric Corp.*, 57 B.R. 1005 (E.D. Pa. 1985). "The existence of a jury trial demand is only a factor for non-core proceedings, because a jury verdict, like any judgment in the bankruptcy court on a non-core proceeding, is merely a recommendation to the district court." *Sevko*, 143 B.R. at 117. Again, FGI's claim is clearly a core proceeding so the jury trial consideration does not apply here.

In summary, FGI has not made the required "timely" showing of sufficient "cause" to support its request to withdraw the reference of this "core proceeding" from the Bankruptcy Court, where FGI's claim has been litigated for more than five years. The Bankruptcy Court has extensive experience with the case and has scheduled briefing on summary judgment and Daubert motions which should resolve this case in its entirety. Judge Sonderby is in the best position to interpret and enforce her prior rulings. Moreover, Judge Feikens' December 3, 2007 stay order makes moot the grounds upon which FGI filed this motion in the first place.

WHEREFORE, Kmart Corporation respectfully requests that this Honorable Court enter an order denying the motion to withdraw reference as to Kmart's objection to FLOORgraphics, Inc.'s claim in Kmart's bankruptcy proceeding.

Dated: December 5, 2007                KMART CORPORATION


                                       By:   /s/ William J. Barrett
                                             One of its Attorneys


BARACK FERRAZZANO KIRSCHBAUM
 & NAGELBERG LLP
By:    William J. Barrett (6206424)
200 West Madison, Suite 3900
Chicago, IL 60606
Telephone:   312-629-5170
William.barrett@bfkpn.com

and

HOWARD & HOWARD ATTORNEYS, P.C.
By:    Patrick M. McCarthy (MI P49100)
       Thomas H. Walters (P51413)
39400 Woodward Avenue, Suite 101
Bloomfield Hills, Michigan 48304-5151
Telephone: (248) 645-1483
Fax: (248) 645-1568