**UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| In re: | ) | |
| | ) | |
| **KMART CORPORATION, et al.,** | ) | **Case No.: 1:07-cv-06306** |
| | ) | |
| Debtors. | ) | **Honorable John F. Grady** |
| _____ | ) | |

**FLOORGRAPHICS, INC.'S REPLY IN SUPPORT OF ITS MOTION TO WITHDRAW**
**THE REFERENCE AND TRANSFER KMART'S OBJECTION TO FGI'S CLAIM**

FLOORgraphics, Inc. hereby replies in support of FLOORgraphics, Inc.'s Motion to

Withdraw the Reference and Transfer Kmart's Objection to FGI's Claim dated November 6,

2007, (D.I. 1; the "FGI Motion").[1]  As explained in the FGI Motion, the Claim Objection should

be withdrawn pursuant to the terms of 28 U.S.C. §157(d) and transferred to the Michigan District

Court because the transfer will serve the convenience of the parties and witnesses, and is in the

interest of justice.

**I.    INTRODUCTION**

Kmart's Response in Opposition to FLOORgraphics, Inc.'s Motion to Withdraw the

Reference and Transfer Kmart's Objection to FGI's Claim dated December 5, 2007, (D.I. 7; the

"Kmart Response"), does not dispute the key factors at issue:

- The Michigan District Court is the only court that can hear both the Claim Objection and the Michigan Complaint.

- All of the operative facts alleged in the Claim Objection and the Michigan Complaint occurred in Michigan.

- Michigan law controls the Michigan Complaint and Claim Objection.

_____

[1] Capitalized terms in this Reply have the meanings ascribed to them in FGI's Motion.

- Only the Michigan District Court has the benefit of personally assessing the credibility of key trial witnesses (including the author of the Kramer Letter) who reside within its subpoena power.

- The FGI Motion was filed as soon as practicable after Kmart's commencement of the Michigan Action provided the grounds therefor.

The Kmart Response, however, mischaracterizes the state of proceedings in the Bankruptcy Court in order to divert attention from these critical points because:

- The Bankruptcy Court's prior deliberations have been related principally to discovery matters, which are not only resolved, but the normal activities handled in a case that is withdrawn to this Court for trial.

- The Bankruptcy Court's denial of Kmart's summary judgment motions and the rejection of FGI's license agreement do not make the Bankruptcy Court the most efficient forum to try the facts of the case with live witnesses.

- The live testimony of Ken Kramer will unquestionably lead to a better determination of FGI's pending motion to reconsider the *in limine* ruling on the letter that Kramer wrote.

- It is unclear that *res judicata* or collateral estoppel will avoid a separate trial on Kmart's Michigan Action if FGI wins in the Bankruptcy Court.

- Kmart's Motion to Stay all of the trial court proceedings pertaining to the Michigan Complaint ("Kmart Motion") in the Michigan District Court was entered before FGI filed its Response and is the subject of FGI's pending motion to reconsider.

## II.    ARGUMENT

### A.    FGI's Motion is Timely Because It Was Filed As Soon As Practicable After the Grounds to Withdraw Arose.

The determination of timeliness is not based on a standard amount of time, but rather is based on the facts of each case and "the first reasonable opportunity after the moving party has notice of the grounds for withdrawal." *In re Sevko, Inc.*, 143 B.R. 114, 116 (N.D. Ill. 1992) (citations omitted).  Kmart should not confuse this Court by its observation that FGI filed the

FGI Motion five years after filing its proof of claim.[2]  However, the filing of the proof of claim did not start the clock running for purposes of timeliness.  Until Kmart filed the Michigan Complaint, FGI had no reason to seek withdrawal.  Under *Sevko,* the calculation for timeliness began only when FGI was served with a summons and the Michigan Complaint.  FGI filed the FGI Motion within the next four weeks.  This is far shorter than *Sevko* and any case cited by Kmart on this issue.  The FGI Motion unquestionably was timely.

> **B.    Good Cause Exists to Withdraw the Reference Because It Will Serve Judicial Economy While Not Delaying Adjudication.**

Despite Kmart's argument to the contrary, the relevant factors weigh in favor of granting the withdrawal of the reference in this case.  As explained in the FGI Motion, when there are two proceedings in bankruptcy and non-bankruptcy forums that litigate essentially the same core of transactional facts with the same parties, courts have generally found cause for discretionary withdrawal.  *See In re Sevko*, 143 B.R. at 117.  Kmart attempts to distinguish *Sevko* by highlighting language regarding jury demands and that the defendants in *Sevko* included parties other than the debtor.  However, the facts of *Sevko* are quite similar to those in this case.  The jury demand language does not distinguish *Sevko*, because a jury demand was only one of many potentially-relevant factors in determining whether cause exists.  The *Sevko* Court did not place any emphasis on that factor in the calculus of its decision.  *Id.*  The fact that *Sevko* included multiple defendants also does not distinguish it from this case.  The *Sevko* Court did not rely on the multiple defendants in its decision to withdraw the reference, but instead mentioned it in one

---

[2] As noted below,  Judge Sonderby's decisions on discovery and matters unrelated to trial not only do not establish the Bankruptcy Court as the superior forum for trial, they also do not trigger the timeliness calculation.

sentence as a means of distinguishing a case presented by the debtor. *Id.* Kmart's failed attempts to distinguish *Sevko* do not defeat the FGI Motion.

Withdrawing the reference and transferring the Claim Objection to the Michigan District Court will not delay these proceedings because no additional discovery is needed for either the Claim Objection or the Michigan Complaint. Kmart advances the illogical position that it will be more efficient for the Claim Objection and the Michigan Complaint to be adjudicated in *two separate proceedings* – the Bankruptcy Court adjudicating the Claim Objection first, and the Michigan District Court adjudicating the Michigan Complaint once the Bankruptcy Court is done. This approach is inherently flawed – having one judge decide the whole dispute based on live testimony is inherently more fair, accurate and efficient.

Contrary to the elaborate descriptions in the Kmart Response of a few limited proceedings overseen by Judge Sonderby in the Bankruptcy Court, these had little to do with the triable issues of fact. In addition, Judge Sonderby never made any substantive ruling on the Claim Objection.

In one startling mischaracterization, Kmart claims that Judge Sonderby's ruling on Kmart's motion to reject the FGI license agreement makes her the more efficient finder of fact on the Claim Objection. Nothing could be further from the truth. Her ruling on the rejection solely dealt with whether Kmart could exercise its "business judgment" to "reject" the executory license agreement because it was "burdensome" under Section 365 of the Bankruptcy Code. See Memorandum Opinion Approving the Rejection of Retail Advertising License Agreement dated

August 14, 2002 at 17, attached hereto as <u>Exhibit A</u>;[3] *In re Alongi*, 272 B.R. 148, 155 (D. Md. 2001) ("Because a rejected contract is treated as breached and not as destroyed . . . rights and obligations . . . arise under state law and the contract itself."). This analysis focused solely on whether Kmart could make more money by, in essence, anticipatorily repudiating the license agreement with FGI so that it could sign up a more profitable deal with NAMIS. (Ex. A at 14-15.)

By permitting the rejection, the Bankruptcy Court's order established Kmart's liability on FGI's Claim based on the repudiation. Now the focus will shift from Kmart's profitability to a new analysis of the damages that FGI suffered from this repudiation. Hence, the trial will almost exclusively deal with the components of damages, such as FGI's diminished profitability from the loss of Kmart's floor space for advertising, the ripple effect in selling other business and the duration of FGI's exclusive arrangement with Kmart. This last issue raises the need for trial testimony about the Kramer Letter and other testimony about the renewal terms of the license deal. A battle of experts regarding damages to FGI is an entirely new phase of the case.

Judge Sonderby's *denial* of Kmart's summary judgment motions does not mean that the Bankruptcy Court will be the most efficient forum for a trial. She merely determined that there were triable issues of fact. The same is true for her preliminary ruling *in limine*, much touted in the Kmart Response, that the Kramer Letter should not be admitted in evidence. However, this matter is in limbo. Based on FGI's motion to reconsider, Judge Sonderby has decided that her ruling on the sterile briefs and transcripts would benefit from live trial testimony. Hence, she deferred her ruling on FGI's pending motion to reconsider the admissibility of the Kramer Letter

---

[3] Exhibit A is filed under seal in accordance with an order of the Bankruptcy Court for the Northern District of Illinois dated August 14, 2002.

until trial.  The big catch —unaddressed by Kmart's Response— is that *only the Michigan District Court has the power to compel Mr. Kramer, a third party, to testify live.*  To the extent that prior rulings discussed the applicable law, they are a road map for the Michigan District Court, if it chooses to use it to supplement its own native familiarity with Michigan contract law.

Kmart's *res judicata* argument is central to its Response, but that doctrine's applicability is highly questionable.  Kmart Response at 5.  Kmart ignored the argument, raised in FGI's Response to Kmart's Motion to Stay the Michigan Complaint dated December 3, 2007 ("FGI Response"), that collateral estoppel and *res judicata* will not necessarily apply to shorten the duplicative, second trial in the Michigan District Court. While FGI is a party to both the Claim Objection and the Michigan Complaint, Kmart filed the Michigan Claim and the Claim Objection in different capacities.  It is Kmart, the "reorganized debtor," that filed the Michigan Complaint because those claims revested in them.  See Plan of Reorganization § 12.1 (see excerpt attached hereto as <u>Exhibit B</u>).However, as to the Claim Objection Kmart is acting as the "trustee" with authority to object to claims.  See 11 U.S.C. § 1107 (debtor in possession authorized to exercise most rights of bankruptcy trustee, including objecting to claims); Plan of Reorganization § 9.6 (Kmart continues to administer plan trust by objecting to claims; see excerpt attached hereto as <u>Exhibit B</u>).

Because of *Kmart's different capacities,* FGI may not benefit from a victory in the bankruptcy court by asserting that decision in this action under the doctrine of collateral estoppel or *res judicata*.  Collateral estoppel requires that the party to be estopped was a party to the prior litigation, or in privity with such a party, and *res judicata* demands that requisite identity or privity exist between parties to both suits.  *Hammer v. INS*, 195 F.3d 836, 840 (6th Cir. 1999); *Corzin v. Fordu (In re Fordu)*, 201 F.3d 639, 704-05 (6th Cir. 1999). The Sixth Circuit has held

-6-

that a trustee in bankruptcy represents the interests of all creditors of the Debtor's bankruptcy estate, and therefore is not generally considered to be in privity with the debtor, which only must promote its personal interests. *See In re Fordu*, 201 F.3d at 705-06. Hence, Kmart not only promotes a judicially-inefficient approach, it seeks to set one more snare to trap and wear down FGI with expensive, unnecessary and serial proceedings.

This is similar to its death-by-a-thousand-cuts approach to litigation in the Bankruptcy Court. After twice losing, it has filed another wave of summary judgment and *Daubert* motions on Friday, December 14, 2007. Other than revealing Kmart's strategy of attrition, Kmart's recently-filed motions do not bear on the merits of withdrawal and transfer of the Claim Objection. These matters could be briefed over the next few months and decided by the Michigan District Court.

Finally, this Court should not reject the FGI Motion because the Michigan District Court entered a stay of proceedings *before it read the FGI Response.* Kmart filed its unusual motion to stay proceedings on its own complaint on November 19, 2007. This was a countermeasure for the FGI Motion before this Court. Pursuant to the standard briefing schedule established under the local rules for the Michigan District Court, FGI timely filed the FGI Response on December 3, 2007. However, only minutes before that filing, the Michigan District Court entered the Order granting the Kmart Motion. Therefore, the Michigan District Court did not have the benefit of the FGI Response when making its determination. On December 7, 2007, FGI filed a Motion to Reconsider the stay, reopen briefing on the Kmart Motion, and in due course deny the Kmart Motion. (See <u>Exhibit C</u> attached hereto.) The Motion to Reconsider directed the Michigan District Court to points in the unread FGI Response, notably the fact that the Michigan District Court is the best forum to hear both the Claim Objection and the Michigan Complaint, and that

Kmart did not meet its burden in requesting the stay. FGI expects a timely response from the Michigan District Court in its favor. Therefore, while Kmart claims that the FGI Motion can be denied as moot, the reconsideration of the Order makes this Court's decision on the FGI Motion even more relevant.

Kmart's cases are no more relevant or persuasive than its argument that two separate proceedings are more efficient than one. Both of the cited cases are distinguishable from this case. In *Hawaiian Airlines, Inc. v. Mesa Air Group, Inc*., 355 B.R. 214 (D. Haw. 2006), the Bankruptcy Court previously held a scheduling conference and entered a scheduling order which provided a trial date before the movant requested withdrawal of the reference. Here, the Bankruptcy Court has not taken any of these steps in this case. As mentioned above, no pre-trial hearing or trial dates have been set, and the parties will not incur any delay when the Claim Objection is withdrawn from the Bankruptcy Court. However, it should be noted that a scheduling order has been entered by the Michigan District Court for the Michigan Complaint with a trial date set for July 8, 2008. See Scheduling Order dated November 19, 2007, attached hereto as Exhibit D. Therefore, the only potential delay that will occur if the FGI Motion is denied is the adjudication of the Michigan Complaint by the Michigan District Court.

Kmart also misplaces its reliance on *In re Enron Corporation*, 317 B.R. 232 (S.D.N.Y. 2004). Enron required unique knowledge of bankruptcy law and particular familiarity with Enron's claims, which prevented the Court from withdrawing the reference. However, Enron is inapplicable to this case because there are no bankruptcy-related claims to be decided in either the Claim Objection or the Michigan Complaint. As mentioned earlier, both the Claim Objection and the Michigan Complaint involve Michigan law only and the same core of transactional facts; no specialized knowledge of bankruptcy law or the debtor is required. No bankruptcy expertise

-8-

is required.  Once a number is placed on FGI's damages, the terms of the Kmart Plan will determine FGI's recovery without any need for interpretation by a judge   Therefore, unlike Enron, withdrawing the Claim Objection from the Bankruptcy Court does not create any inefficiency in the adjudication of these matters.

## III.    CONCLUSION

For the foregoing reasons, FLOORgraphics, Inc. respectfully requests that this Court withdraw the reference as to the Claim Objection, transfer it to the United States District Court for the Eastern District of Michigan, and grant such other and further relief as the Court deems just.

Dated:  December 19, 2007                    FLOORGRAPHICS, INC.


                                            By:  /s/ J. Mark Fisher

SCHIFF HARDIN LLP
J. Mark Fisher
Patricia J. Fokuo
6600 Sears Tower
Chicago, Illinois 60606
(312) 258-5500

SUSMAN GODFREY L.L.P.
James T. Southwick
Richard W. Hess
1000 Louisiana, Suite 5100
Houston, Texas 77002
(713) 651-9366

BOIES, SCHILLER & FLEXNER L.L.P.
William C. Jackson
5301 Wisconsin Avenue, NW
Washington, D.C. 20015
(202) 237-2727

## CERTIFICATE OF SERVICE

I, J. Mark Fisher, an attorney, certify that prior to 4:30 p.m. on this 19th day of December, 2007, I caused to be served a copy of the foregoing **FLOORGRAPHICS, INC.'S REPLY IN SUPPORT OF ITS MOTION TO WITHDRAW THE REFERENCE AND TRANSFER KMART'S OBJECTION TO FGI'S CLAIM (including a copy of Exhibit A, which has been filed under seal)** via electronic service and, in addition, via first class mail, postage prepaid:

William J. Barrett
Barack, Ferrazzano, Kirschbaum,
  Perlman & Nagelberg
333 W. Wacker Drive
Suite 2700
Chicago, IL 60611

James H. Geary
Comerica Building, Suite 800
151 South Rose Street
Kalamazoo, Michigan 49007-4718

Patrick M. McCarthy
Howard & Howard Attorneys, P.C.
101 North Main Street
Suite 300
Ann Arbor, MI 48104-1475

_____/s/ J. Mark Fisher_____
        J. Mark Fisher

CH2\2231415.4

-10-