# EXHIBIT A

UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| In re: | ) |
| | ) |
| KMART CORPORATION, et al. | ) Case No.: 1:07-cv-06306 |
| | ) |
| Debtors. | ) Honorable John F. Grady |
| | ) |

### FLOORGRAPHICS, INC'S STATEMENT OF A DOCUMENT FILED UNDER SEAL

FLOORgraphics, Inc. hereby states that Exhibit A to FLOORgraphics, Inc.'s Reply in Support of Its Motion to Withdraw the Reference and Transfer Kmart's Objection to FGI's Claim has been filed under seal, in accordance with an order of the Bankruptcy Court for the Northern District of Illinois dated August 14, 2002.

Dated: December 18, 2007          By:_____

SCHIFF HARDIN L.L.P.
J. Mark Fisher
6600 Sears Tower
Chicago, Illinois 60606
(312) 258-5500
mfisher@schiffhardin.com

ATTORNEY FOR FLOORGRAPHICS, INC.

CH2\2238398.1

# EXHIBIT B

UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

---

| | | |
|---|---|---|
| In re | x : | Case No. 02-02474 |
| | : | Jointly Administered |
| KMART CORPORATION, et al., | : | Chapter 11 |
| | : | Hon. Susan Pierson Sonderby |
| Debtors. | : | |
| | : | |
| | x | |

---

# FIRST AMENDED JOINT PLAN OF REORGANIZATION OF KMART CORPORATION AND ITS AFFILIATED DEBTORS AND DEBTORS-IN-POSSESSION

John Wm. Butler, Jr.
J. Eric Ivester
Mark A. McDermott
Samuel S. Ory
SKADDEN, ARPS, SLATE, MEAGHER
  & FLOM (ILLINOIS)
333 West Wacker Drive, Suite 2100
Chicago, Illinois 60606-1285
(312) 407-0700

Attorneys for Debtors and Debtors-in-Possession

Dated: February 25, 2003

Reorganized Debtor or their Affiliates, on or after the Effective Date, as set forth in the Restructuring Transaction Notice.

   **1.138**  **"Restructuring Transactions Notice"** means the notice filed with the Bankruptcy Court on or before the Exhibit Filing Date as <u>Exhibit H</u> to this Plan listing the Restructuring Debtors and briefly describing the relevant Restructuring Transactions, including the corporate structure of the Reorganized Debtors as described in <u>Exhibit I</u> to this Plan.

   **1.139**  **"Retained Actions"** means all Claims, Causes of Action, rights of action, suits and proceedings, whether in law or in equity, whether known or unknown, which any Debtor or any Debtors' Estate may hold against any Person, including, without limitation, (a) Claims and Causes of Action brought prior to the Effective Date, (b) Claims and Causes of Action against any Persons for failure to pay for products or services provided or rendered by any of the Debtors, (c) Claims and Causes of Action relating to strict enforcement of any of the Debtors' intellectual property rights, including patents, copyrights and trademarks, and (d) Claims and Causes of Action seeking the recovery of any of the Debtors' or the Reorganized Debtors' accounts receivable or other receivables or rights to payment created or arising in the ordinary course of any of the Debtors' or the Reorganized Debtors' businesses, including, without limitation, claim overpayments and tax refunds; <u>provided</u>, <u>however</u>, that the foregoing shall not include Trust Claims (including Avoidance Claims that are Trust Claims), which will be transferred to the Kmart Creditor Trust, Avoidance Claims, or Claims explicitly released under this Plan or by Final Order of the Bankruptcy Court prior to the date hereof.

   **1.140**  **"Scheduled"** means, with respect to any Claim or Interest, the status, priority, and amount, if any, of such Claim or Interest as set forth in the Schedules.

   **1.141**  **"Schedules"** means the schedules of assets and liabilities and the statements of financial affairs filed in the Chapter 11 Cases by the Debtors, as such schedules or statements have been or may be further modified, amended or supplemented from time to time in accordance with Bankruptcy Rule 1009 or orders of the Bankruptcy Court.

   **1.142**  **"Secured Claim"** means a Claim secured by a security interest in or a lien on property in which a Debtor's Estate has an interest or that is subject to setoff under section 553 of the Bankruptcy Code, to the extent of the value, as of the Effective Date or such other date as is established by the Bankruptcy Court, of such Claimholder's interest in the applicable Estate's interest in such property or to the extent of the amount subject to setoff, as applicable, as determined by a Final Order of the Bankruptcy Court pursuant to section 506(a) of the Bankruptcy Code or in the case of setoff, pursuant to section 553 of the Bankruptcy Code, or as otherwise agreed upon in writing by the Debtors and the Claimholder.

   **1.143**  **"Securities Act"** means the Securities Act of 1933, as now in effect or hereafter amended.

   **1.144**  **"Securities Action"** means any Cause of Action by a Person, other than by or on behalf of a Debtor, against any Person other than a Debtor arising out of or related to a Person's ownership of Interests, including Existing Common Stock, including, without limitation, the following actions, (i) those certain class actions on behalf of purchasers of securities who purchased such securities between March 13, 2001 and May 15, 2002 as such class actions were amended and consolidated by

18

property in respect of such forfeited distribution, including any dividends or interest attributable thereto, shall revert to the Reorganized Debtors notwithstanding any federal or state escheat laws to the contrary.

9.5 **Services of Indenture Trustees, Agents and Servicers.** The services, with respect to implementation of the distributions contemplated by this Plan, of Servicers under the relevant agreements that govern the rights of Claimholders and Interestholders shall be as set forth elsewhere in this Plan, and the Reorganized Debtors shall reimburse any Servicer for reasonable and necessary services performed by it (including reasonable attorneys' fees) as contemplated by, and in accordance with, this Plan, without the need for the filing of an application with, or approval by, the Bankruptcy Court.

9.6 **Claims Administration Responsibility.**

(a) **Reorganized Debtors.** The Reorganized Debtors will retain responsibility for administering, disputing, objecting to, compromising, or otherwise resolving and making distributions (if any) with respect to all Claims against and Interests in the Debtors.

(b) **Filing of Objections.** Unless otherwise extended by the Bankruptcy Court, any objections to Claims or Interests shall be served and filed on or before the Claims/Interests Objection Deadline. Notwithstanding any authority to the contrary, an objection to a Claim or Interest shall be deemed properly served on the Claimholder or Interestholder if the Debtors or the Reorganized Debtors effect service in any of the following manners: (i) in accordance with Federal Rule of Civil Procedure 4, as modified and made applicable by Bankruptcy Rule 7004; (ii) to the extent counsel for a Claimholder or Interestholder is unknown, by first class mail, postage prepaid, on the signatory on the proof of claim or interest or other representative identified on the proof of claim or interest or any attachment thereto; or (iii) by first class mail, postage prepaid, on any counsel that has appeared on the Claimholder's or Interestholder's behalf in the Chapter 11 Cases.

(c) **Determination of Claims and Interests.** Except as otherwise agreed by the Debtors, any Claim or Interest as to which a proof of claim or proof of interest was timely filed in the Chapter 11 Cases may be determined and liquidated in accordance with the ADR Procedures. Any Claim or Interest determined and liquidated pursuant to (i) the ADR Procedures, (ii) an order of the Bankruptcy Court, or (iii) applicable non-bankruptcy law (which determination has not been stayed, reversed or amended and as to which determination (or any revision, modification or amendment thereof) the time to appeal or seek review or rehearing has expired and as to which no appeal or petition for review or rehearing was filed or, if filed, remains pending) shall be deemed, to the extent applicable and subject to any provision in the ADR Procedures to the contrary, an Allowed Claim or an Allowed Interest, as the case may be, in such liquidated amount and satisfied in accordance with this Plan (provided that, to the extent a Claim is an Allowed Insured Claim, such Allowed Claim shall be paid from the insurance proceeds available to satisfy such liquidated amount). Nothing contained in this Article 9.6 shall constitute or be deemed a waiver of any claim, right, or Cause of Action that the Debtors or the Reorganized Debtors may have against any Person in connection with or arising out of any Claim or Claims, including, without limitation, any rights under section 157(b) of title 28 of the United States Code.

9.7 **Delivery of Distributions.** Distributions to Allowed Claimholders or Allowed Interestholders shall be made by the Disbursing Agent or the appropriate Servicer (a) at the addresses set

44

(g) Notwithstanding anything to the contrary in this Plan, neither the Trust Advisory Board nor any of its members, designees, counsel, financial advisors or any duly designated agent or representatives of any such party shall be liable for the act, default or misconduct of any other member of the Trust Advisory Board, nor shall any member be liable for anything other than such member's own gross negligence or willful misconduct. The Trust Advisory Board may, in connection with the performance of its duties, and in its sole and absolute discretion, consult with its counsel, accountants or other professionals, and shall not be liable for anything done or omitted or suffered to be done in accordance with such advice or opinions. If the Trust Advisory Board determines not to consult with its counsel, accountants or other professionals, it shall not be deemed to impose any liability on the Trust Advisory Board, or its members and/or designees.

(h) The Trust Advisory Board shall govern its proceedings through the adoption of by-laws, which the Trust Advisory Board may adopt by majority vote. No provision of such by-laws shall supersede any express provision of this Plan or the Trust Agreement.

11.5 **Distributions of Trust Assets.** Distributions of the Trust Recoveries to Claimholders and Interestholders in accordance with their interests in the Kmart Creditor Trust as set forth in this Plan shall be made at least semi-annually beginning with a calendar quarter that is not later than the end of the second calendar quarter after the Effective Date; provided, however, that the Trustee shall not be required to make any such semiannual distribution in the event that the aggregate proceeds and income available for distribution to such Claimholders and Interestholders is not sufficient, in the Trustee's discretion (after consultation with the Trust Advisory Board) to economically distribute monies, and in any case, in connection with any interim (as opposed to final) distribution, the Trustee shall retain at least the amount of funds paid to the Kmart Creditor Trust pursuant to Article 11.3(d)(i) and Article 11.3(d)(ii) of this Plan, provided, further, that with respect to distributions to Interestholders that cannot be economically distributed as aforesaid, the Trustee shall divide such aggregate amount of distributions into $50.00 increments and thereafter make such $50.00 distributions to Interestholders who otherwise were entitled to, but did not receive, a distribution under Article 5.11 and who are randomly selected by the Trustee. The Trustee will make continuing efforts to prosecute or settle the Trust Claims, make timely distributions, and not unduly prolong the duration of the Kmart Creditor Trust.

## ARTICLE XII

### EFFECT OF THE PLAN ON CLAIMS AND INTERESTS

12.1 **Revesting of Assets.** Except as otherwise explicitly provided in this Plan, on the Effective Date, all property comprising the Estates (including Retained Actions, but excluding property that has been abandoned pursuant to an order of the Bankruptcy Court) shall revest in each of the Debtors that owned such property or interest in property as of the Effective Date, free and clear of all Claims, liens, charges, encumbrances, rights and Interests of creditors and equity security holders, provided, however, that (i) the Trust Claims shall be transferred to the Kmart Creditor Trust pursuant to Article 11.2 of this Plan and (ii) assets intended to secure the Exit Financing Facility shall be transferred to such Debtors or other entities owned by New Operating Company as is necessary to effect the Exit Financing Facility. As of the Effective Date, the Reorganized Debtors may operate their businesses and use, acquire, and dispose of property and settle and compromise Claims or Interests without supervision of the Bankruptcy Court, free of any restrictions of the Bankruptcy Code or Bankruptcy Rules, other than those restrictions expressly imposed by this Plan and Confirmation Order.

# EXHIBIT C

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

KMART CORPORATION,

    Plaintiff,

v.

FLOORGRAPHICS, INC.,

    Defendant.

Case No. 07-14299

Hon. John Feikens

**DEFENDANT'S MOTION TO RECONSIDER ORDER
GRANTING PLAINTIFF'S MOTION TO STAY**

Defendant FLOORgraphics, Inc. ("FGI"), by its counsel, hereby moves the Court to reconsider its order entered on December 3, 2007 (the "Order") granting Plaintiff's Motion to Stay all of the trial court proceedings in this matter (the "Kmart Motion"), a copy of which Order is attached hereto as Exhibit A. In support of this motion, FGI states that the Kmart Motion should be denied for the following reasons.

The Kmart Motion was filed on November 19, 2007. Pursuant to the standard briefing schedule established under this Court's local rules, FGI's Response to Kmart's Motion to Stay (the "Response") was timely filed on December 3, 2007. However, a few minutes before that filing, the Court entered the Order. Thus, the Court did not have the benefit of FGI's Response. A copy of FGI's Response is attached hereto as Exhibit B.

{33975\2\DT292235.DOC;1}

FGI respectfully requests that this Court review FGI's Motion to Reconsider the Response because:

- As more fully stated in the FGI Response, on November 3, 2007, FGI moved the United States District Court for the Northern District of Illinois to withdraw the reference of Kmart's claim objection and to transfer same to this Court (the "FGI Motion"). The transfer of the claim objection to this Court will promote judicial economy, uniformity, and reduce delay and costs to the parties because this Court is the only forum that has jurisdiction to provide complete relief to the parties. Many factors make it a superior forum to resolve the dispute. Michigan law and proof will determine the case. Most important, only in this Court can the finder of fact personally observe the witnesses' testimony and determine their credibility on key issues.

- Kmart has not met its burden to show (i) a likelihood of success on the merits of the Michigan Complaint, (ii) irreparable harm to Kmart in the absence of a stay, (iii) a lack of substantial harm to FGI from a stay and (iv) a public interest in favor of the stay.

- This Court is the superior forum to resolve the complete dispute between the parties because it alone has subject matter jurisdiction, because of the close nexus of the relevant events to Michigan and the application of Michigan law and because only in this Court can the fact finder personally assess the credibility of key trial witnesses who reside within its subpoena power.

- The FGI Motion was filed first in the United States District Court for the Northern District of Illinois; its imminent determination by that court could render the stay unnecessary. Indeed, Kmart has already cited the Order in its response to the FGI Motion as a ground why the transfer is unnecessary.

{33975\2\DT292235.DOC;1}

2

WHEREFORE, Defendant FLOORgraphics, Inc. respectfully requests that this Court reconsider the Order, reopen briefing on the Kmart Motion and, in due course deny the Kmart Motion and grant such other and further relief as the Court deems just.

Respectfully Submitted,

KERR, RUSSELL AND WEBER, PLC

s/Allison B. Clements
Allison B. Clements (P70467)
Attorney for Defendant
Kerr, Russell and Weber, PLC
500 Woodward Ave. Ste 2500
Detroit, MI 48226
313-961-0200
abc@krwlaw.com

BOIES, SCHILLER & FLEXNER L.L.P.
William A. Isaacson
William C. Jackson
5301 Wisconsin Avenue, NW
Washington, D.C. 20015
(202) 237-2727 (tel.)
(202) 237-6131 (fax)

SCHIFF HARDIN LLP
J. Mark Fisher
6600 Sears Tower
Chicago, Illinois 60606
(312) 258-5500 (tel.)
(312) 258-5700 (fax)

Dated: December 7, 2007

{33975\2\DT292235.DOC;1}

## **CERTIFICATE OF SERVICE**

I hereby certify that on December 7, 2007, I electronically filed the foregoing document with the Clerk of the Court using the ECF system, which will send notification of such filing to all ECF participants.

Parties receiving service electronically are as follows:

Patrick M. McCarthy (P49100)
Howard & Howard Attorneys, P.C.
pmm@howardandhoward.com

               KERR, RUSSELL AND WEBER, PLC.

               s/Allison B. Clements
               Allison B. Clements (P70467)
               Attorney for Defendant
               Kerr, Russell and Weber, PLC
               500 Woodward Ave. Ste 2500
               Detroit, MI 48226
               313-961-0200
               abc@krwlaw.com

Dated December 7, 2007